COHEN MILSTEIN SELLERS & TOLL PLLC
Joseph M. Sellers*
Harini Srinivasan*
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
jsellers@cohenmilstein.com
hsrinivasan@cohenmilstein.com

GREEN SAVITS LLC
Glen D. Savits
25B Vreeland Road, Suite 207
Florham Park, NJ 07932
Telephone: (973) 695-7777
gsavits@greensavits.com

OUTTEN & GOLDEN LLP
Justin M. Swartz*
Melissa Lardo Stewart*
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
jms@outtengolden.com
mstewart@outtengolden.com

*Attorneys for Plaintiff and the Putative*
*Class and Collective*

*admitted pro hac vice

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CARMEN ALVAREZ, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil No. 2:17-cv-04095-KM-JBC |
| v. | ) ) | Electronically Filed |
| CHIPOTLE MEXICAN GRILL, INC., and CHIPOTLE SERVICES, LLC, | ) ) ) | **BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(B)** |
| Defendants. | ) ) ) ) | ORAL ARGUMENT REQUESTED |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND .......................................................................................... 1

I.      Chipotle Has Classified Proposed Collective Members as Exempt Since
        December 12, 2016. ........................................................................................... 1

II.     Many Apprentices Have Earned Less than the Minimum Salary Level. ........................... 3

III.    Apprentices Regularly Work More Than 40 Hours Per Week Without Overtime
        Pay. ................................................................................................................... 3

PROCEDURAL HISTORY ............................................................................................ 4

ARGUMENT ................................................................................................................. 6

I.      Court-Authorized Notice is Fair, Efficient, and Advances the Goals of the FLSA ........... 6

II.     Plaintiff Faces a Low Burden for Conditional Certification. ................................. 7

III.    Plaintiff Comfortably Meets Her Low Burden for Issuing Notice. .................. 10

IV.     The Court Should Approve Plaintiff's Proposed Notice and Proposed Notice
        Process. ........................................................................................................... 12

        A.      The Notice is Accurate and Informative. ............................................. 12

        B.      Notice Should Issue to Potential Collective Members Who Worked at Any
                Point After December 12, 2016. ........................................................... 16

CONCLUSION ............................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                    PAGE(S)

*Adami v. Cardo Windows, Inc.*,
    299 F.R.D. 68 (D.N.J. Jan. 29, 2014) ................................................................16

*Aquilino v. Home Depot, Inc.*,
    No. 04 Civ. 4100, 2006 WL 2583563 (D.N.J. Sept. 7, 2006).......................................9, 10, 11

*Atkinson v. TeleTech Holdings, Inc.*,
    No. 14 Civ. 253, 2015 WL 853234 (S.D. Ohio Feb. 26, 2015).............................................13

*Bellaspica v. PJPA, LLC*,
    3 F. Supp. 3d 257 (E.D. Pa. 2014) ........................................................................13

*Bernardez v. Firstsource Solutions USA, LLC*,
    No. 17 Civ. 613, 2019 WL 4345986 (W.D. Ky. Sept. 12, 2019) ............................................13

*Bhumithanarn v. 22 Noodle Mkt. Corp.*,
    No. 14 Civ. 2625, 2015 WL 4240985 (S.D.N.Y. July 13, 2015) ............................................13

*Bowen v. Geo. Univ. Hosp.*,
    408 U.S. 204 (1988)........................................................................................2

*Bowser v. Empyrean Servs., LLC*,
    324 F.R.D. 346 (W.D. Pa. 2018) .....................................................................8, 9, 16

*Braunstein v. E. Photographic Labs., Inc.*,
    600 F.2d 335 (2d Cir. 1978).................................................................................7

*Brooklyn Sav. Bank v. O'Neil*,
    324 U.S. 697 (1945)........................................................................................6

*Camp v. Bimbo Bakeries USA, Inc.*,
    No. 18 Civ. 378, 2019 WL 440567 (D.N.H. Feb. 4, 2019) ...................................................13

*Cuevas v. Dias & Fragoso, Inc.*,
    No. 17 Civ. 357, 2018 WL 1725605 (E.D. Cal. Apr. 10, 2018)............................................14

*Depalma v. Scotts Co. LLC*,
    No. 13 Civ. 7740, 2017 WL 1243134 (D.N.J. Jan. 20, 2017) ...................................................7

*Desio v. Russell Rd. Food & Beverage, LLC*,
    No. 15 Civ. 1440, 2017 WL 4349220 (D. Nev. Sept. 29, 2017) ...........................................14

*Eley v. Stadium Grp., LLC*,
    No. 14 Civ. 1594, 2015 WL 5611331 (D.D.C. Sept. 22, 2015) .............................................14

*Elliot v. Amspec Servs., LLC*,
 No. 10 Civ. 6575, 2011 WL 6002019 (D.N.J. Nov. 29, 2011)........................8, 9, 16

*Gervasio v. Wawa Inc.*,
 No. 17 Civ. 245, 2018 WL 385189 (D.N.J. Jan. 11, 2018) ..........................14, 15, 16

*Gillot v. Powerex, Inc.*,
 904 F. Supp. 442 (W.D. Pa. 1995)...............................................................................4

*Goldman v. RadioShack Corp.*,
 No. 03 Civ. 32, 2003 WL 21250571 (E.D. Pa. Apr. 16, 2003) ..................................9

*In re Grossman's Inc.*,
 607 F.3d 114 (3d Cir. 2010)........................................................................................11

*Halle v. W. Penn. Allegheny Health Sys. Inc.*,
 842 F.3d 215 (3d Cir. 2016).............................................................................6, 7, 8

*Herring v. Hewitt Assocs., Inc.*,
 No. 06 Civ. 267, 2007 WL 2121693 (D.N.J. July 24, 2007)...........................8, 9, 11

*Higgins v. Bayada Home Health Care, Inc.*,
 No. 16 Civ. 2382, 2018 WL 8368874 (M.D. Pa. May 11, 2018) .............................15

*Hoffman-La Roche, Inc. v. Sperling*,
 493 U.S. 165 (1989)........................................................................6, 7, 12, 14

*Integrity Staffing Sols., Inc. v. Busk*,
 574 U.S. 27 (2014)........................................................................................................7

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
 132 F. Supp. 3d 707 (D.S.C. 2015)............................................................................14

*Kelly v. Bank of Am., N.A.*,
 No. 10 Civ. 5332, 2011 WL 7718421 (N.D. Ill. Sept. 23, 2011)...............................14

*Kucker v. Petco Animal Supplies Stores, Inc.*,
 No. 14 Civ. 9983, 2016 WL 237425 (S.D.N.Y. Jan. 19, 2016)..................................14

*Lynch v. United Servs. Auto. Ass'n*,
 491 F. Supp. 2d 357 (S.D.N.Y. 2007)........................................................................9

*McKinney v. United Stor-All Ctrs., Inc.*,
 585 F. Supp. 2d 6 (D.D.C. 2008) ...............................................................................9

*Mendoza v. Mo's Fisherman Exch., Inc.*,
 No. 15 Civ. 1427, 2016 WL 3440007 (D. Md. June 22, 2016) .................................14

*Miller v. N.J. State Dep't of Corr.*,
  145 F.3d 616 (3d Cir. 1998)................................................................16

*Monroe v. United Air Lines, Inc.*,
  90 F.R.D. 638 (N.D. Ill. 1981)............................................................7

*Morisky v. Pub. Serv. Elec. & Gas Co.*,
  111 F. Supp. 2d 493 (D.N.J. 2000) ...................................................8

*Mott v. Driveline Retail Merch., Inc.*,
  23 F. Supp. 3d 483 (E.D. Pa. 2014) ..................................................13

*Nevada v. U.S. Dep't of Labor*,
  218 F. Supp. 3d 520 (E.D. Tex. 2016)...............................................4

*Nevada v. U.S. Dep't of Labor*,
  275 F. Supp. 3d 795 (E.D. Tex. 2017)...............................................11

*Ortiz-Alvarado v. Gomez*,
  No. 14 Civ. 209, 2014 WL 3952434 (D. Minn. Aug. 13, 2014)...............15

*Pearsall-Dineen v. Freedom Mortg. Corp*,
  27 F. Supp. 3d 567 (D.N.J. 2014) .......................................8, 10, 12, 16

*Porter v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
  No. 17 Civ. 8043, 2018 WL 5874094 (D.N.J. Nov. 9, 2018)............11, 13, 15, 16

*Puglisi v. TD Bank, N.A.*,
  998 F. Supp. 2d 95 (E.D.N.Y. 2014) ...................................................9

*Purnamasidi v. Ichiban Japanese Rest.*,
  No. 10 Civ. 1549, 2010 WL 3825707 (D.N.J. Sept. 24, 2010)...............8, 9, 11, 12

*Regan v. City of Hanahan*,
  No. 16 Civ. 1077, 2017 WL 1386334 (D.S.C. Apr. 17, 2017)................14

*Rhodes v. Truman Med. Ctr.*,
  No. 13 Civ. 00990, 2014 WL 4722285 (W.D. Mo. Sept. 23, 2014)...........13

*Seitzinger v. Reading Hosp. & Med. Ctr.*,
  165 F.3d 236 (3d Cir. 1999)................................................................17

*Shakib v. Back Bay Rest. Grp., Inc.*,
  No. 10 Civ. 4564, 2011 WL 5082106 (D.N.J. Oct. 26, 2011)................8, 9, 11, 16

*Shendock v. Dir., Office of Workers' Comp. Programs*,
  893 F.2d 1458 (3d Cir. 1990)..............................................................17

*State of Nevada v. U.S. Dep't of Labor*,
No. 16 Civ. 731 (E.D. Tex. Mar. 19, 2018) ...........................................................5

*Summa v. Hofstra Univ.*,
No. 07 Civ. 3307, 2008 WL 3852160 (E.D.N.Y. Aug. 14, 2008) ............................9

*Symczyk v. Genesis HealthCare Corp.*,
656 F.3d 189 (3d Cir. 2011).........................................................................6, 7, 12

*Talarico v. Pub. P'ships, LLC*,
No. 17 Civ. 2165, 2018 WL 3972332 (E.D. Pa. Aug. 20, 2018)................13, 15, 16

*Tenn. Coal, Iron & R.R. Co. v. Muscoda Local 123*,
321 U.S. 590 (1944)...................................................................................................6

*Texas v. Dep't of Labor*,
929 F.3d 205 (5th Cir. 2019) .................................................................................5, 6

*Zavala v. Wal Mart Stores Inc.*,
691 F.3d 527 (3d Cir. 2012)....................................................................................7, 8

## STATUTES

29 U.S.C. § 216(b) ........................................................................................................7

Pub. L. No. 80–49, 61 Stat. 84 (1947) ........................................................................7

## REGULATIONS

Defining and Delimiting the Exemptions for Executive, Administrative,
Professional, Outside Sales and Computer Employees, 81 Fed. Reg. 32391
(May 23, 2016).......................................................................................................2, 11

Defining and Delimiting the Exemptions for Executive, Administrative,
Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51230
(Sept. 27, 2019).............................................................................................................2

## OTHER AUTHORITIES

*Chipotle Apprentice Salaries*, Glassdoor,
https://www.glassdoor.com/Salary/Chipotle-Apprentice-Salaries-
E15228_D_KO9,19.htm (last updated September 28, 2019) ....................................3

*Judges' Class Action Notice and Claims Process Checklist and Plain Language
Guide*, Federal Judicial Center (2010),
http://www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last visited Oct. 7,
2019) .........................................................................................................................12

## INTRODUCTION

Chipotle classifies its apprentices—employees training to become general managers—as exempt "executives" or "administrators" under the Fair Labor Standards Act ("FLSA") and fails to pay them overtime compensation for hours they work in excess of 40 in a workweek, even though they earn less than $47,476 per year, the minimum salary level required by law.  Through this motion, Plaintiff Carmen Alvarez seeks to protect the rights of other apprentices who worked for Chipotle by sending them Court-approved notice of this action and allowing them to decide whether to join and attempt to recover unpaid wages.

Through the Complaint, admissions in Chipotle's Answer, and testimony in three declarations filed in support of this motion, Plaintiff exceeds her minimal evidentiary burden to show that she and fellow apprentices were similarly situated with respect to Chipotle's policy of classifying them as exempt while paying them less than the required salary threshold.  Court-authorized notice of this action is therefore appropriate.

## FACTUAL BACKGROUND

### I.     Chipotle Has Classified Proposed Collective Members as Exempt Since December 12, 2016.

Historically, Chipotle has treated its apprentices, general managers-in-training, as subject to the executive and administrative exemptions from the overtime requirements of the FLSA.[1] Complaint ("Compl."), Dkt 1 ¶¶ 25-26; Answer, Dkt. 5 ¶¶ 25-26.  However, on or around November 14, 2016, Chipotle converted the apprentice position to non-exempt status nationwide and began paying apprentices overtime premiums for time worked over 40 hours per week. Compl. ¶ 30; *see also* Answer ¶ 30.  Chipotle made this change to comply with a federal

---

[1]     The sole exception to Chipotle's pre-2016 overtime exemption policy is California, where Chipotle has treated its apprentices as non-exempt for a number of years.

regulation that increased the salary threshold for the executive and administrative exemptions from $23,660 to $47,476 (the "Overtime Rule"), which went into effect on December 1, 2016. Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 81 Fed. Reg. 32391 (May 23, 2016).[2]

Shortly after Chipotle reclassified its apprentice position to non-exempt, a court in the Eastern District of Texas preliminarily enjoined the Department of Labor ("DOL") from enforcing the Overtime Rule. *Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520 (E.D. Tex. 2016). Although the Texas district court did not invalidate the Overtime Rule or enjoin any private parties from enforcing it, Chipotle informed its apprentices on December 9, 2016 that:

> In mid-November, we converted Apprentices to hourly in order to comply with the FLSA changes, which were due to take effect on December 1. Since the court blocked the anticipated changes from taking effect, we will convert Apprentices back to salaried exempt effective Monday, 12/12. This means Apprentices outside CA and NY [w]ill no longer be required to clock-in or out for shifts, which is expected to result in a 50-hour week on average.

Compl. ¶¶ 34-37.[3] In its Answer, Chipotle admitted sending this email and conceded that it "speaks for itself." Answer ¶¶ 35-36. Thus, with the exception of a short period from approximately November 14, 2016 to December 12, 2016, Chipotle consistently classified

---

[2]     On September 27, 2019, the Department of Labor published a final rule raising the salary level for exempt employees under the FLSA. Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51230 (Sept. 27, 2019). The rule, which takes effect on January 1, 2020, formally rescinds the 2016 Overtime Rule. Rescission of the Overtime Rule has no effect on Plaintiff's claims between December 12, 2016 and December 31, 2019, as the rule rescinding the Overtime Rule is not retroactive. *See Bowen v. Geo. Univ. Hosp.*, 408 U.S. 204, 208 (1988) ("[A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms.").

[3]     Chipotle maintained the non-exempt status for apprentices in New York and California. *See* Compl. ¶ 35.

apprentices in the proposed collective as exempt from the FLSA's overtime protections.  *See* Answer ¶¶ 26, 36-37.

Plaintiff worked as an apprentice from December 2, 2015 to March 2017 and was among the apprentices whom Chipotle switched from exempt to non-exempt and back to exempt.

## II.      Many Apprentices Have Earned Less than the Minimum Salary Level.

Chipotle paid Plaintiff an annual salary of approximately $43,082 (or $829 per week) – less than the $47,476 per year (or $913 per week) threshold – between December 12, 2016 and the end of her employment with Chipotle in March 2017.  Compl. ¶ 38; Answer ¶¶ 38, 42 (admitting that it paid Plaintiff less than $913 per week after December 1, 2016).  Many other apprentices earned less than the $47,476 threshold as well.  *See* Ex. A (Declaration of Carmen Alvarez) ("Alvarez Decl.") ¶ 3; Ex. B (Declaration of Asher Guni) ("Guni Decl.") ¶ 3; Ex. C (Declaration of Joie Dickerson) ("Dickerson Decl.") ¶ 3; *see also Chipotle Apprentice Salaries*, Glassdoor, https://www.glassdoor.com/Salary/Chipotle-Apprentice-Salaries-E15228_D_KO9,19.htm (last updated September 28, 2019) (providing that the average base pay for Chipotle apprentices is $40,051 and the average total pay is approximately $41,000).

## III.     Apprentices Regularly Work More Than 40 Hours Per Week Without Overtime Pay.

Chipotle expects its apprentices to work more than 40 hours per week on a regular basis. *See* Compl. ¶ 37 (citing email stating Chipotle policy that apprentices should expect to work "a 50-hour week on average"); Answer ¶ 37 (admitting sending the email, which "speaks for itself").  In line with Chipotle's policy, Plaintiff and other apprentices regularly work more than 40 hours per week.  Compl. ¶¶ 45-46; Alvarez Decl. ¶ 4; Guni Decl. ¶ 4; Dickerson Decl. ¶ 4. Despite this, Chipotle did not pay them overtime wages at any point after December 12, 2016. Compl. ¶¶ 39-40; Answer ¶¶ 39-40 (admitting this fact); *see also id.* ¶ 34 (admitting that it

3

"ceased paying overtime premiums to Apprentices in New Jersey" once it converted its apprentices back to exempt status in December 2016).

## **PROCEDURAL HISTORY**

Ms. Alvarez filed a class and collective action complaint in this Court on June 7, 2017, pursuant to the private right of action in the FLSA, 29 U.S.C. § 216(b), and New Jersey state law. *See* Compl. ¶¶ 74-87. The complaint challenges Chipotle's policy and practice of failing to pay apprentices in compliance with the FLSA and state law under two distinct theories: (1) that she and other apprentices earned less than $47,476 per year, the minimum salary level required by the Overtime Rule, and (2) that her primary duties did not meet the duties test for the executive or administrative exemptions. If Chipotle fails to prove that its exempt-classified employees meet any element of the FLSA exemptions, judgment must be entered in favor of Plaintiff. *See Gillot v. Powerex, Inc.*, 904 F. Supp. 442, 446-47 (W.D. Pa. 1995) (noting that "an employee will not be exempt from the overtime pay requirements of the FLSA unless the employer affirmatively shows that the employee fits all the exemption's requirements"). On July 26, 2017, Chipotle filed an answer in which it did not dispute that Plaintiff and other apprentices were exempt and not paid overtime, that Plaintiff earned less than $47,476 per year, and that it informed apprentices that they should expect to work 50 hours per week. Answer ¶¶ 26, 36-40, 42.

Six days later, instead of addressing the merits of this case before this Court, on August 1, 2017, Chipotle filed a motion for contempt in *Nevada v. U.S. Department of Labor*, a separate matter pending before the Eastern District of Texas, to which neither Chipotle nor Plaintiff was a party. Even though Chipotle had not moved to dismiss Plaintiff's allegations in this Court, it asked the Texas court to hold Ms. Alvarez and her counsel in contempt for relying on the salary basis theory in this Court. *See* Chipotle's Mot. for Contempt, Dkt. 9-3.

On August 11, 2017, Chipotle moved to stay this action pending the Texas court's ruling on the motion for contempt.  Dkt. 9.  Plaintiff opposed Chipotle's motion to stay.  Dkt. 14.  On November 6, 2017, the Texas court held oral argument on the contempt motion, which Plaintiff and her counsel attended.  At that hearing, the Texas court suggested that it would hold Plaintiff and her counsel in contempt.  Because Plaintiff and her counsel believed, based on these statements, that the Texas court would hold them in contempt and that an appeal would therefore be necessary, on November 9, 2017, Plaintiff withdrew her opposition to Chipotle's motion to stay this action and requested that the stay extend through the expected contempt order and any appeals.  Dkt. 26.  On November 14, 2017, the Court granted Chipotle's motion and stayed the action pending the proceedings in Texas.  Dkt. 29.

The Texas court issued an order finding Ms. Alvarez and her counsel in contempt on March 19, 2018.  Mem. Op. & Order, *State of Nevada v. U.S. Dep't of Labor*, No. 16 Civ. 731 (E.D. Tex. Mar. 19, 2018), ECF No. 129.  The Texas court subsequently stayed the contempt order, finding that Plaintiff's and her counsel's motion for an emergency stay "present[ed] a serious legal question and substantial arguments on the merits," and that Plaintiff and her counsel "would suffer irreparable harm absent a stay."  Mem. Opinion & Order, *State of Nevada v. U.S. Dep't of Labor*, No. 16 Civ. 731, at *8 (E.D. Tex. May 1, 2018), ECF No. 141.  Ms. Alvarez and her attorneys appealed the contempt ruling and, upon joint request from the parties, this Court extended the stay of this action pending resolution of the appeal.  Dkt. 37.

The Fifth Circuit vacated the Texas court's contempt order on July 2, 2019, holding that Plaintiff and her counsel were not bound by the injunction.  *Texas v. Dep't of Labor*, 929 F.3d 205, 213 (5th Cir. 2019).  The Fifth Circuit explained that that "there was no basis for the district court's exercise of personal jurisdiction over [Plaintiff and her counsel]" and that Chipotle's

contempt motion "lack[ed] authoritative support." *Id.* at 213-14.  Plaintiff promptly notified this Court of the ruling and, on September 25, 2019, the Parties attended a conference to set a schedule for litigation before this Court.  Dkt. No. 46.  On October 4, 2019, Chipotle file a motion for judgment on the pleadings, Dkt. No. 57, a motion that it could have filed more than two and a half years earlier, had it not attempted to avoid having this Court rule on the issue by filing an unprecedented and meritless contempt motion in an unrelated action.

## ARGUMENT

### I.   Court-Authorized Notice is Fair, Efficient, and Advances the Goals of the FLSA.

The FLSA authorizes employees to bring a collective action "[o]n behalf of . . . themselves and other employees similarly situated."  29 U.S.C. § 216(b).  "By permitting employees to proceed collectively, the FLSA provides employees the advantages of pooling resources and lowering individual costs so that those with relatively small claims may pursue relief where individual litigation might otherwise be cost-prohibitive."  *Halle v. W. Penn. Allegheny Health Sys. Inc.*, 842 F.3d 215, 223 (3d Cir. 2016).  Collective actions also "yield[] efficiencies for the judicial system through resolution in one proceeding of common issues arising from the same allegedly wrongful activity affecting numerous individuals."  *Id.* (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

The collective action mechanism advances the remedial purpose of the FLSA, which was designed "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage."  *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945)), *rev'd on other grounds*, 569 U.S. 66 (2013); *see also Tenn. Coal, Iron & R.R. Co. v. Muscoda Local 123*, 321 U.S. 590, 597 (1944) (providing that the FLSA is "remedial and humanitarian in

6

purpose" and "must not be interpreted or applied in a narrow, grudging manner"), *superseded by statute on other grounds*, Pub. L. No. 80–49, 61 Stat. 84 (1947), *as recognized in Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014).

District courts have discretion to authorize notice to potential opt-ins so that they may join an existing action as early in the case as is practicable. *Hoffman-La Roche*, 493 U.S. at 170 (realizing the benefits of collective actions "depend[s] on employees receiving accurate and timely notice concerning the pendency of the action"); *Halle*, 842 F.3d at 224 (highlighting the benefits of a court's "early intervention in the preparation and distribution of notice to potential participants").

It is crucial to the protection of workers' rights that employees are able to opt in early to FLSA collective actions because a worker's statute of limitations runs until she files a consent form stating her intention to join the case. *See* 29 U.S.C. §§ 216(b), 256(b); *see also Symczyk*, 656 F.3d at 200. Until that time, the worker's claims are diminished or extinguished by the day. *Depalma v. Scotts Co. LLC*, No. 13 Civ. 7740, 2017 WL 1243134, at *2 (D.N.J. Jan. 20, 2017) (emphasizing that "[o]pt-in plaintiffs' FLSA claims are . . . particularly vulnerable to the running of the statute of limitations"). Here, timely notice will curtail the continued erosion of apprentices' claims. *Monroe v. United Air Lines, Inc.*, 90 F.R.D. 638, 639 (N.D. Ill. 1981) (prompt notice "comports with the broad remedial purpose of the [FLSA]" (quoting *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978)).

## II.    Plaintiff Faces a Low Burden for Conditional Certification.

Courts in this Circuit follow a two-step process for certifying FLSA collective actions. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012). At the first step, the burden is minimal. Plaintiff must make a "'modest factual showing' – something beyond mere speculation – to demonstrate a factual nexus between the manner in which the employer's alleged policy

affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (quoting *Zavala*, 691 F.3d at 536 n.4).  "A showing that opt-in plaintiffs bring the same claims and seek the same form of relief has been considered sufficient for conditional certification."  *Pearsall-Dineen v. Freedom Mortg. Corp*, 27 F. Supp. 3d 567, 570 (D.N.J. 2014); *see also Purnamasidi v. Ichiban Japanese Rest.*, No. 10 Civ. 1549, 2010 WL 3825707, at *3 (D.N.J. Sept. 24, 2010) ("At this stage, some courts require 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan [in violation of law].'" (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000))).

In assessing whether a plaintiff has made this "modest factual showing," courts typically consider the allegations and admissions in pleadings and testimony in affidavits filed in support of the motion for conditional certification.  *Pearsall-Dineen*, 27 F. Supp. 3d at 570 (quoting *Zavala*, 691 F.3d at 536 n.4).  In light of the minimal evidentiary burden, "the court's determination 'typically results in conditional certification.'"  *Shakib v. Back Bay Rest. Grp., Inc.*, No. 10 Civ. 4564, 2011 WL 5082106, at *2 (D.N.J. Oct. 26, 2011) (quoting *Herring v. Hewitt Assocs., Inc.*, No. 06 Civ. 267, 2007 WL 2121693, at *2 (D.N.J. July 24, 2007)); *accord Elliot v. Amspec Servs., LLC*, No. 10 Civ. 6575, 2011 WL 6002019, at *2 (D.N.J. Nov. 29, 2011); *Purnamasidi*, 2010 WL 3825707, at *2.

A plaintiff need not show that they are identical to potential collective members to meet their burden at the conditional certification stage.  Distinctions in job duties or locations worked does not preclude conditional certification when all potential collective members were subject to the same unlawful policy.  *Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 352-53 (W.D. Pa. 2018); *Shakib*, 2011 WL 5082106, at *4 (holding that the fact that putative opt-in plaintiffs had

different positions did not change the fact that they were "victims of the same alleged scheme");

*Goldman v. RadioShack Corp.*, No. 03 Civ. 32, 2003 WL 21250571, at *8 (E.D. Pa. Apr. 16,

2003).

At this stage, the Court should not consider the merits of the parties' claims or defenses.

*Bowser*, 324 F.R.D. at 353 (refusing to consider the "question of whether or not plaintiff has

stated a cause of action, or will prevail"); *Shakib*, 2011 WL 5082106, at *3 ("Simply put,

arguments concerning actual payment of overtime hours or the existence of a written policy to do

so go to the merits of a case, and are thus inapplicable at this stage of the litigation."); *Elliot*,

2011 WL 6002019, at *2 ("The merits of [the plaintiff's] claim need not be evaluated . . . .");

*Purnamasidi*, 2010 WL 3825707, at *3 (same); *Herring*, 2007 WL 2121693, at *8 (refusing to

consider "the substance of Defendant's arguments on the merits" at the conditional certification

stage); *Aquilino v. Home Depot, Inc.*, No. 04 Civ. 4100, 2006 WL 2583563, at *2 (D.N.J. Sept.

7, 2006) (declining to consider merits at conditional certification stage); *Goldman*, 2003 WL

21250571, at *8 ("[A]ny class certification effort should not turn on the merits of the case even

after the discovery period has closed.").[4]

---

[4]      *See also Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014) (indicating
that, at the first stage, "the focus of the inquiry is not on whether there has been an actual
violation of law"); *McKinney v. United Stor-All Ctrs., Inc.*, 585 F. Supp. 2d 6, 10 (D.D.C. 2008)
("[D]efendants' argument that determining whether the potential plaintiffs are similarly situated
requires a highly individualized and fact-intensive analysis [that] is more appropriately addressed
at the second stage of the certification process."); *Summa v. Hofstra Univ.*, No. 07 Civ. 3307,
2008 WL 3852160, at *2 (E.D.N.Y. Aug. 14, 2008) ("At the initial assessment stage, before
discovery is completed, the court does not resolve factual disputes, decide substantive issues
going to the ultimate merits or make credibility determinations."); *Lynch v. United Servs. Auto.
Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not
resolve factual disputes, decide substantive issues going to the ultimate merits, or make
credibility determinations.").

After the court conditionally certifies an FLSA collective, the case proceeds to discovery. *Pearsall-Dineen*, 27 F. Supp. 3d at 570. After discovery, the certification decision can be revisited if the record shows that the plaintiffs who opt in to the lawsuit are not in fact similarly situated. *Aquilino*, 2006 WL 2583563, at *2.

### III.    Plaintiff Comfortably Meets Her Low Burden for Issuing Notice.

Plaintiff easily meets her minimal burden to show that she and the proposed collective are similarly situated, such that notice should issue. Through declarations from three apprentices who worked at approximately six different locations in three different states, as well as evidence of Chipotle's own policies, set forth in its email to apprentices, Plaintiff makes a strong showing that apprentices are similarly situated. For the reasons set forth below, Plaintiff respectfully requests that the Court authorize Plaintiff to send notice to the following potential collective:

> All apprentices who were employed by Chipotle from December 12, 2016 and until the date of final judgment in this matter in any state except California, New York, and Texas and earned less than $47,476 per year.[5]

The pleadings, declarations, and other initial evidence demonstrate that Plaintiff and other apprentices are similarly situated because they were subject to Chipotle's uniformly-applied, unlawful compensation policy. First, Plaintiff and two declarants testify that they and other apprentices were uniformly classified as exempt from the FLSA's overtime provisions, a fact which Chipotle concedes. *See supra* Factual Background, Part I.

Second, many apprentices earned less than the minimum salary threshold set by the Overtime Rule, effective December 1, 2016, in all jurisdictions except the Eastern District of Texas. *See supra* Factual Background, Part II; Defining and Delimiting the Exemptions for

---

[5]    Plaintiff reserves the right to move for court-authorized notice to a collective of Chipotle apprentices who are similarly situated because their duties were primarily manual and customer-service related.

10

Executive, Administrative, Professional, Outside Sales and Computer Employees, 81 Fed. Reg. 32391 (May 23, 2016).[6]

Third, apprentices regularly worked more than 40 hours per week, and did not pay overtime wages to Plaintiff or other apprentices in the proposed collective. *See supra* Factual Background, Part III.

This evidence is more than sufficient to meet Plaintiff's modest burden at this stage. *See, e.g.*, *Porter v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 17 Civ. 8043, 2018 WL 5874094, at *2-3, 5 (D.N.J. Nov. 9, 2018) (authorizing notice based on complaint and two declarations asserting that employees "regularly worked more than 40 hours per week" and that defendant "did not pay overtime wages"); *Shakib*, 2011 WL 5082106, at *3 (same, where plaintiff's complaint and proffered affidavits set forth sufficient evidence "of a common plan or scheme" that violated the FLSA); *Purnamasidi*, 2010 WL 3825707, at *1, 4 (same based on pleadings and one declaration describing more than 40 hours of work per week without overtime or minimum wage); *Aquilino*, 2006 WL 2583563, at *2, 4 (affirming magistrate judge's order allowing notice based the complaint and five statements by plaintiffs showing "a common practice" of misclassifying employees as exempt and requiring them to work more than 40 hours per week without overtime compensation); *Herring*, 2007 WL 2121693, at *5-6 (ordering issuance of notice based on the complaint and declarations because employees "were subject to the same company-wide policies of classifying them as exempt and denying them overtime pay").

---

[6]     In August 2017, the Texas court held that the Overtime Rule was invalid. *Nevada v. U.S. Dep't of Labor*, 275 F. Supp. 3d 795, 808 (E.D. Tex. 2017). The Texas court's ruling is not binding on this Court. *See In re Grossman's Inc.*, 607 F.3d 114, 121 (3d Cir. 2010) (noting that "we decide cases before us based on our own examination of the issue, not on the views of other jurisdictions").

IV.     **The Court Should Approve Plaintiff's Proposed Notice and Proposed Notice Process.**

District courts have broad discretion to determine the form and content of notice in FLSA collective actions. *Hoffman-La Roche*, 439 U.S. at 170 (confirming "the existence of the trial court's discretion" to craft appropriate notice in FLSA cases but refraining from examining "the details of its exercise"); *Pearsall-Dineen*, 27 F. Supp. 3d at 570, 573 (conditional certification is really a "district court's exercise of [its] discretionary power . . . to facilitate the sending of notice to potential class members" (quoting *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011))).  Court-authorized notice "(1) ensures that the employees receive 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate,' and (2) 'serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cut off dates to expedite the disposition of the action.'" *Purnamasidi*, 2010 WL 3825707, at *4 (quoting *Hoffman-La Roche*, 493 U.S. at 170, 172).

A.      **The Notice is Accurate and Informative.**

The Court should authorize Plaintiff's proposed Notice and Consent to Join Form, *see* Ex. D (Notice) and Ex. E (Consent to Join Form), to be sent by U.S. Mail, email, and text message, and to also be made available to the collective on a stand-alone website established for the purpose of notifying collective members of the lawsuit and their right to opt in.  The proposed Notice is "accurate[] and informative," *Hoffmann-La Roche*, 493 U.S. at 172, and is consistent with the model notices approved by the Federal Judicial Center.[7]

---

[7]     *See Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, Federal Judicial Center (2010), http://www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last visited Oct. 7, 2019).

Issuance of notice through these methods will ensure that all potential class members are reached as soon as possible, allowing them to make an informed decision.  Courts commonly approve notice by U.S. Mail and a combination of other means.  *See e.g.*, *Porter*, 2018 WL 5874094, at *5 (approving court notice by mail and email); *Talarico v. Pub. P'ships, LLC*, No. 17 Civ. 2165, 2018 WL 3972332, at *4 (E.D. Pa. Aug. 20, 2018) (same); *Bellaspica v. PJPA, LLC*, 3 F. Supp. 3d 257, 261 (E.D. Pa. 2014) (same); *Mott v. Driveline Retail Merch., Inc.*, 23 F. Supp. 3d 483, 491 (E.D. Pa. 2014) (notice by mail, email, and website); *see also Atkinson v. TeleTech Holdings, Inc.*, No. 14 Civ. 253, 2015 WL 853234, at *5 (S.D. Ohio Feb. 26, 2015) (highlighting the "current nationwide trend" of emailing court-approved notice in FLSA cases); *Rhodes v. Truman Med. Ctr.*, No. 13 Civ. 00990, 2014 WL 4722285, at *5 (W.D. Mo. Sept. 23, 2014) ("[E]mail provides an efficient and cost-effective means of disseminating notice documents and has been endorsed by courts in the past.").

Text messaging is increasingly one of the most prominent forms of communication in our society and a reliable way to reach putative collective members, particularly those in the restaurant industry.  *See Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14 Civ. 2625, 2015 WL 4240985, at *4-5 (S.D.N.Y. July 13, 2015) ("[G]iven the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating [with putative collective members.]").  As a result, courts across the country have approved the issuance of notice to putative collective members via text message notifications, acknowledging that individuals are more likely to retain mobile phone numbers when they move.  *See, e.g.*, *Bernardez v. Firstsource Solutions USA, LLC*, No. 17 Civ. 613, 2019 WL 4345986, at *9 (W.D. Ky. Sept. 12, 2019) (authorizing notice via mail, email and text); *Camp v. Bimbo Bakeries USA, Inc.*, No. 18 Civ. 378, 2019 WL 440567, at *5 (D.N.H. Feb.

4, 2019) (same); *Cuevas v. Dias & Fragoso, Inc.*, No. 17 Civ. 357, 2018 WL 1725605, at *6 (E.D. Cal. Apr. 10, 2018), *report and recommendation adopted*, 2018 WL 2046962 (E.D. Cal. May 2, 2018) (same); *Desio v. Russell Rd. Food & Beverage, LLC*, No. 15 Civ. 1440, 2017 WL 4349220, at *5 (D. Nev. Sept. 29, 2017) ("[D]ue to the transient nature of [the putative collective members], contact via text messages does not seem 'unnecessary and redundant'" (quoting *Hoffman-La Roche*, 493 U.S. at 170)); *Regan v. City of Hanahan*, No. 16 Civ. 1077, 2017 WL 1386334, at *3 (D.S.C. Apr. 17, 2017) (approving notice via text message because "individuals are likely to retain their mobile numbers and email addresses even when they move"); *Eley v. Stadium Grp., LLC*, No. 14 Civ. 1594, 2015 WL 5611331, at *3-4 (D.D.C. Sept. 22, 2015) (approving notice via text message as "in line with what has been approved in other FLSA collective actions"); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) (noting that "one's email address and cell phone number serv[e] as the most consistent and reliable method of communication").

Posting notice on a standalone website, through which opt-ins can electronically submit claim forms, is also common. *See Gervasio v. Wawa Inc.*, No. 17 Civ. 245, 2018 WL 385189, at *7 (D.N.J. Jan. 11, 2018) (authorizing creation of a website where collective members could submit consent forms); *Mendoza v. Mo's Fisherman Exch., Inc.*, No. 15 Civ. 1427, 2016 WL 3440007, at *22 (D. Md. June 22, 2016) (granting plaintiffs' request for "notice through a website"); *Kucker v. Petco Animal Supplies Stores, Inc.*, No. 14 Civ. 9983, 2016 WL 237425, at *15-17 (S.D.N.Y. Jan. 19, 2016) (granting plaintiffs' request for a stand-alone website containing a notice and consent form); *Kelly v. Bank of Am., N.A.*, No. 10 Civ. 5332, 2011 WL 7718421, at *2 (N.D. Ill. Sept. 23, 2011) (ordering creation of "an internet website where

potential FLSA class members may obtain additional information about the Notice, and where potential FLSA class members may submit a Consent to Join form for this case").

Plaintiff also requests authorization to send a reminder notice by U.S. Mail, email, and text mid-way through the notice period.  *See* Ex. F (Reminder Postcard).  The initial notice may be insufficient because the population of potential collective members – lower-income, service industry workers – commonly work long and unpredictable hours.  A reminder notice ensures that potential collective members are advised of the lawsuit and are aware of their rights.  Courts regularly authorize such reminders to ensure that workers are aware of (and do not inadvertently disregard) the impending deadline to join, and also to increase the odds that workers are informed of their rights.  *See, e.g.*, *Porter*, 2018 WL 5874094, at *5 (authorizing reminder notice); *Talarico*, 2018 WL 3972332, at *4 (permitting a reminder notice because it "better ensures that putative plaintiffs who do not receive, open, view or forget about the initial notice have the additional opportunity to timely file an opt-in, if they so desire"); *Higgins v. Bayada Home Health Care, Inc.*, No. 16 Civ. 2382, 2018 WL 8368874, at *2 (M.D. Pa. May 11, 2018) (authorizing reminder notice); *Gervasio*, 2018 WL 385189, at *7 (same); *Ortiz-Alvarado v. Gomez*, No. 14 Civ. 209, 2014 WL 3952434, at *6 (D. Minn. Aug. 13, 2014) (finding that a reminder notice "is reasonable to ensure that potential class members [receive notice]").

To facilitate notice, Plaintiff respectfully requests that the Court order Chipotle to produce the following information in a Microsoft Excel spreadsheet within 14 days of granting Plaintiff's motion: (1) names; (2) last known mailing addresses; (3) last known personal telephone numbers; (4) last known e-mail addresses; (5) job title; (6) dates of employment in covered position; (7) work locations; and (8) the last four digits of the Social Security numbers

for all potential collective members.[8]  Courts in this Circuit have found that production of this type of information to facilitate notice is appropriate.  *See, e.g.*, *Talarico*, 2018 WL 3972332, at *4 (ordering defendant to produce employee data including last four digits of SSN); *Gervasio*, 2018 WL 385189, at *7 (authorizing production of employee data for purposes of issuing notice); *Pearsall-Dineen*, 27 F. Supp. 3d at 573 & n.5 (same).

   **B.   Notice Should Issue to Potential Collective Members Who Worked at Any Point After December 12, 2016.**

   Plaintiff requests leave to send notice to all potential collective members who worked at any time between December 12, 2016, the date on which Chipotle reinstituted its exemption policy (and after the Overtime Rule raised the FLSA minimum salary level to $47,476), and the present.  To ensure that all employees with live FLSA claims can opt in to the action, courts typically authorize notice periods counting back three years.  *See, e.g.*, *Porter*, 2018 WL 5874094, at *4; *Gervasio*, 2018 WL 385189, at *5, *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 82 (D.N.J. 2014).  Limiting the notice period to anything less than three years would, in essence, be a premature determination on the merits, which is inappropriate at this stage. *Bowser*, 324 F.R.D. at 352-53 (refusing to consider "[t]he question of whether or not plaintiff has stated a cause of action, or will prevail"); *Shakib*, 2011 WL 5082106, at *2 ("The merits of the plaintiff's claim need not be evaluated . . . ."); *Elliot*, 2011 WL 6002019, at *4 (finding that "fact intensive, individualized inquiries" are not relevant to the determination that collective members are similarly situated").[9]

---

[8]    Plaintiff requests the last four digits of each putative Collective Member's SSN because, in the event a putative Collective Member's notice is returned undeliverable, an updated address can be located for that individual through other means.

[9]    The parties are in the process of negotiating a tolling agreement.  Plaintiff reserves the right to move for equitable tolling on behalf of herself and those who opt in to the collective in

## CONCLUSION

For the reasons presented above, Plaintiff respectfully requests that the Court: (1) authorize the issuance of the proposed Notice, Consent to Join form, and reminder notice to all potential members of the proposed collective in the methods and manner described above; and (2) order Chipotle to produce contact information for all potential collective members as described above.

Dated:  October 9, 2019                     Respectfully submitted,

                                            /s/ Glen D. Savits
                                            Glen D. Savits
                                            GREEN SAVITS LLC
                                            25B Vreeland Road, Suite 207
                                            Florham Park, NJ 07932
                                            Telephone: (973) 695-7777
                                            gsavits@greensavits.com

                                            Justin M. Swartz*
                                            Melissa Lardo Stewart*
                                            OUTTEN & GOLDEN LLP
                                            685 Third Avenue, 25th Floor
                                            New York, New York 10017
                                            Telephone: (212) 245-1000
                                            jms@outtengolden.com
                                            mstewart@outtengolden.com

                                            Joseph M. Sellers*
                                            Harini Srinivasan*
                                            COHEN MILSTEIN SELLERS & TOLL PLLC
                                            1100 New York Avenue, NW, Suite 500
                                            Washington, DC 20005

---

the event the parties fail to reach an agreement or reach agreement on behalf of only a subset of the proposed collective. *See Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998) (holding that equitable tolling is appropriate when the "principles of equity would make [the] rigid application [of a limitation period] unfair" (alteration in original) (quoting *Shendock v. Dir., Office of Workers' Comp. Programs*, 893 F.2d 1458, 1462 (3d Cir. 1990))); *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999) (providing that the doctrine permits "plaintiffs [to] sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances").

Telephone: (202) 408-4600
jsellers@cohenmilstein.com
hsrinavasan@cohenmilstein.com

*Attorneys for Plaintiff and the Putative Class and Collective*

*admitted *pro hac vice*