COHEN MILSTEIN SELLERS & TOLL PLLC
Joseph M. Sellers*
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
jsellers@cohenmilstein.com

GREEN SAVITS LLC
Glen D. Savits
25B Vreeland Road, Suite 207
Florham Park, NJ 07932
Telephone: (973) 695-7777
gsavits@greensavits.com

OUTTEN & GOLDEN LLP
Justin M. Swartz*
Melissa Lardo Stewart*
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
jms@outtengolden.com
mstewart@outtengolden.com

*Attorneys for Plaintiffs and the Putative
Class and Collective*

*admitted *pro hac vice*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARMEN ALVAREZ and ASHER GUNI, on behalf of themselves and all others similarly situated, | Civil No. 2:17-cv-04095-KM-JBC |
| Plaintiff, | Electronically Filed |
| v. | **BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT, SERVICE AWARDS, AND PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND EXPENSES** |
| CHIPOTLE MEXICAN GRILL, INC., and CHIPOTLE SERVICES, LLC, | |
| Defendants. | Motion Return Date: April 5, 2021 |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 1

I.     Claims ................................................................................................................ 1

II.    Procedural History ........................................................................................... 4

        A.     Complaint and Answer ........................................................................ 4

        B.     Contempt Proceedings in Texas and the Fifth Circuit ....................... 4

        C.     Lifting of Stay and Litigation ............................................................. 6

        D.     Settlement Negotiations ....................................................................... 7

SETTLEMENT TERMS ............................................................................................. 8

I.     The Settlement Fund and Eligible Collective Members ................................. 8

II.    Claims Procedure ............................................................................................ 9

III.   Allocation Formula ........................................................................................ 10

IV.   Released Claims .............................................................................................. 11

V.    Service Awards ............................................................................................... 12

VI.   Settlement Claims Administration.................................................................. 12

VII.  Attorneys' Fees and Expenses ....................................................................... 13

ARGUMENT .............................................................................................................. 13

I.     A FLSA Collective Should be Established for Settlement Purposes.............. 13

II.    A One-Step Approval Process Is Standard for FLSA Settlements ................. 14

III.   The Settlement Is Fair and Should Be Approved .......................................... 15

        A.     The Settlement Resolves a Bona Fide Dispute .................................. 15

        B.     The Settlement is Consistent with the FLSA's Purpose .................... 16

        C.     The Relevant Girsh Factors Support Settlement Approval................. 16

               1.     Complexity, Expense, and Duration of the Litigation .............. 17

i

2.      Stage of Proceeding ................................................................. 18

3.      Chipotle's Ability to Withstand a Greater Judgment............................... 18

4.      Risks of Establishing Liability................................................... 19

5.      Reasonableness of Settlement Fund............................................... 20

IV.     The Proposed Notice Is Adequate and Should Be Approved ............................. 22

V.      The Service Award to Plaintiffs Should Be Approved as Fair and Reasonable .............. 22

VI.     Plaintiffs' Counsel's Fees and Expenses Are Appropriate and Should Be Approved ..... 26

        A.      The Percentage-of-the-Fund Method is the Preferred Method for Awarding
                Attorney's Fees in Common Fund Cases Like This ................................. 26

        B.      The Requested Fee Is Fair and Reasonable ....................................... 27

                1.      Size of Fund and Number of Persons Benefitted..................... 28

                2.      Objections from the Class........................................ 28

                3.      Skill and Efficiency of Plaintiffs' Counsel ...................... 28

                4.      Complexity and Duration of the Litigation........................ 31

                5.      Risk of Non-Payment............................................. 33

                6.      Amount of Time Dedicated to the Case by Plaintiffs' Counsel........ 33

                7.      Awards in Similar Cases.......................................... 34

                8.      The Lodestar Cross-Check Confirms the Reasonableness of the Fee
                        Request.......................................................... 35

        C.      Plaintiffs' Counsel Are Entitled to Reimbursement of Expenses Under the
                Settlement. ................................................................... 38

CONCLUSION.......................................................................... 39

## **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*Adeva v. Intertek USA Inc.*,
    No. 09 Civ. 1096 (D.N.J. Dec. 22, 2010), ECF No. 228 .......................................35

*Alvarez v. BI Incorporated*,
    No. 16 Civ. 2705, 2020 WL 1694294 (E.D. Pa. Apr. 6, 2020) ........................14, 23

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002)............................................................................37

*Arrington v. Optimum Healthcare IT, LLC*,
    No. 17 Civ. 3950, 2018 WL 5631625 (E.D. Pa. Oct. 31, 2018).............................37

*In re AT&T Corp.*,
    455 F.3d 160 (3d Cir. 2006)...............................................................................36

*Badia v. HomeDeliveryLink, Inc.*,
    Nos. 12 Civ. 6920, 12 Civ. 7097, 2015 WL 5666077 (D.N.J. Sept. 25, 2015) ......23

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
    450 U.S. 728 (1981)..........................................................................................17

*Bernhard v. TD Bank, N.A.*,
    No. 08 Civ. 4392 (D.N.J. Feb. 3, 2010), ECF No. 40............................................35

*Bettger v. Crossmark, Inc.*,
    No. 13 Civ. 2030, 2015 WL 279754 (M.D. Pa. Jan. 22, 2015) ..............................15

*Bozak v. FedEx Ground Package Sys., Inc.*,
    No. 11 Civ. 00738, 2014 WL 3778211 (D. Conn. July 31, 2014)....................14, 22

*Bredbenner v. Liberty Travel, Inc.*,
    No. 09 Civ. 905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ........................... *passim*

*Briggs v. PNC Fin. Servs. Grp., Inc.*,
    No. 15 Civ. 10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016).........................14

*Brown v. Progressions Behavioral Health Servs., Inc.*,
    No. 16 Civ. 6054, 2017 WL 2986300 (E.D. Pa. July 13, 2017).............................37

*Brumley v. Camin Cargo Control, Inc.*,
    No. 08 Civ. 1798, 2012 WL 1019337 (D.N.J. Mar. 26, 2012)....................... *passim*

*Camesi v. Univ. of Pittsburgh Med. Ctr.*,
    729 F.3d 239 (3d Cir. 2013)...............................................................................20

*In re Cendant Corp. PRIDES Litig.*,
    243 F.3d 722 (3d Cir. 2001)...........................................................................36

*Chemi v. Champion Mortg.*,
    No. 05 Civ. 1238, 2009 WL 1470429 (D.N.J. May 26, 2009) ................................28

*In re Chickie's & Pete's Wage & Hour Litig.*,
    No. 12 Civ. 6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ....................14, 15, 34

*Chipotle Mexican Grill, Inc. v. Scott*,
    No. 20-257 (U.S.)........................................................................................17

*Clarke v. Flik Int'l Corp.*,
    No. 17 Civ. 1915, 2020 WL 747067 (D.N.J. Feb. 14, 2020)................................14

*Creed v. Benco Dental Supply Co.*,
    No. 12 Civ. 1571, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013) .........................23

*Cruz v. JMC Holdings, Ltd.*,
    No. 16 Civ. 9321, 2019 WL 4745284 (D.N.J. Sept. 30, 2019).....................*passim*

*In re Diet Drugs*,
    582 F.3d 524 (3d Cir. 2009)....................................................................36, 37

*Dino v. Pennsylvania*,
    No. 08 Civ. 01493, 2013 WL 4041681 (M.D. Pa. Aug. 8, 2013).........................14

*Escobar v. Pret a Manger (USA) Ltd.*,
    No. 17 Civ. 5227, 2019 WL 11272914 (S.D.N.Y. Feb. 14, 2019) .......................26

*Foster v. Kraft Foods Grp. Inc.*,
    Nos. 09 Civ. 453, 12 Civ. 205, 2013 WL 440992 (W.D. Pa. Jan. 15, 2013).........23

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975).....................................................................15, 16

*Godshall v. Franklin Mint Co.*,
    No. 01 Civ. 6539, 2004 WL 2745890 (E.D. Pa. Dec. 1, 2004) ...........................24

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)........................................................................27

*Harshbarger v. Penn Mut. Life Ins. Co.*,
    No. 12 Civ. 6172, 2017 WL 6525783 (E.D. Pa. Dec. 20, 2017) .........................37

*Herbin v. The PNC Fin. Servs. Grp.*,
    Nos. 19 Civ. 696, 20 Civ. 58 (W.D. Pa. Jan. 27, 2020), ECF No. 25.....................14

*Hoffman–La Roche, Inc. v. Sperling*,
  493 U.S. 165 (1989)..........................................................................................22

*In re Ikon Office Sols., Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)........................................................................35

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012)..............................................................................38

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*,
  No. 06 Civ. 3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009)....................24, 28

*Jones v. SCO, Silver Care Operations LLC*,
  No. 13 Civ. 7910, 2019 WL 2022371 (D.N.J. May 8, 2019) ............................14

*Keller v. TD Bank, N.A.*,
  No. 12 Civ. 5054, 2014 WL 5591033 (E.D. Pa. Nov. 4, 2014).....................37, 38

*Knox v. Jones Grp.*,
  No. 15 Civ. 1738, 2017 WL 3834929 (S.D. Ind. Aug. 31, 2017)......................14

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
  No. 17 Civ. 10219, 2017 WL 6460244 (D. Mass. June 8, 2017) ......................14

*Lenahan v. Sears, Roebuck & Co*,
  No. 02 Civ. 45, 2006 WL 2085282 (D.N.J. July 24, 2006).........................28, 35

*In re Linerboard Antitrust Litig.*,
  No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ............................24

*In re Lucent Techs. Inc., Sec. Litig.*,
  327 F. Supp. 2d 426 (D.N.J. 2006) ....................................................................35

*Lusardi v. Lechner*,
  855 F.2d 1062 (3d Cir. 1988)........................................................................14, 28

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) .........................................................................15

*Martin v. Foster Wheeler Energy Corp.*,
  No. 06 Civ. 878, 2008 WL 906472 (M.D. Pa. Mar. 31, 2008)..........................36

*McGee v. Ann's Choice, Inc.*,
  No. 12 Civ. 2664, 2014 WL 2514582 (E.D. Pa. June 4, 2014) .........................23

*Medley v. Am. Cancer Soc.*,
  No. 10 Civ. 3214, 2010 WL 3000028 (S.D.N.Y. July 23, 2010) .......................14

*Meijer, Inc. v. 3M*,
    No. 04 Civ. 5871, 2006 WL 2382718 (E.D. Pa. Aug. 4, 2006)............................................36

*Nevada v. U.S. Dep't of Labor*,
    218 F. Supp. 3d 520 (E.D. Tex. 2016) ...............................................................................2, 3

*Nevada v. U.S. Dep't of Labor*,
    321 F. Supp. 3d 709 (E.D. Tex. Mar. 19, 2018) ...............................................................4, 5

*Nichols v. SmithKline Beecham Corp.*,
    No. 00 Civ. 6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ...........................................37

*Oddo v. Bimbo Bakeries USA, Inc.*,
    No. 16 Civ. 04267, 2017 WL 2172440 (D.N.J. May 17, 2017) ..........................................20

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)................................................................................................38

*Reynolds v. Fidelity Invs. Institutional Operations Co.*,
    No. 18 Civ. 423 (M.D.N.C. Jan. 8, 2020), ECF No. 92.....................................................29

*In re Rite Aid*,
    362 F. Supp. 2d at 589-90............................................................................................36, 37

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)................................................................................................33

*In re Safety Components, Inc. Sec. Litig.*,
    166 F. Supp. 2d 72 (D.N.J. 2001) ................................................................................27, 38

*Scott v. Chipotle Mexican Grill, Inc.*,
    954 F.3d 502 (2d Cir. 2020)................................................................................................18

*Scott v. Chipotle Mexican Grill, Inc.*,
    No. 12 Civ. 8333 (S.D.N.Y) .........................................................................................17, 32

*Singleton v. First Student Mgmt. LLC*,
    No. 13 Civ. 1744, 2014 WL 3865853 (D.N.J. Aug. 6, 2014).............................................18

*Slaughter v. Sykes Enters., Inc.*,
    No. 17 Civ. 2038, 2019 WL 529512 (D. Colo. Feb. 11, 2019) ..........................................29

*State of Nevada v. U.S. Dep't of Labor*,
    No. 16 Civ. 731 (E.D. Tex. Mar. 19, 2018), ECF No. 129.................................................30

*Stevens v. SEI Investments Co.*,
    No. 18 Civ. 4205, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020).....................................36, 37

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
   No. 03 Civ. 4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) ...........................................36

*Sullivan v. DB Investments, Inc.*,
   No. 04 Civ. 2819, 2008 WL 8747721 (D.N.J. May 22, 2008) ...................................36, 37, 38

*Taha v. Bucks Cty.*,
   No. 12 Civ. 6867, 2020 WL 7024238 (E.D. Pa. Nov. 30, 2020)...........................................23

*Taubenfeld v. AON Corp.*,
   415 F.3d 597 (7th Cir. 2005) ..................................................................................................33

*Tavares v. S-L Distrib. Co.*,
   No. 13 Civ. 1313, 2016 WL 1743268 (M.D. Pa. May 2, 2016) ............................................23

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)...................................................................................27

*Texas v. Dep't of Labor*,
   929 F.3d 205 (5th Cir. 2019) ....................................................................................................5

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005).................................................................................................22

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...................................................................................36

*Weston v. TechSol, LLC*,
   No. 17 Civ. 0141, 2018 WL 4693527 (E.D.N.Y. Sept. 26, 2018)...................................14, 22

## STATUTES, REGULATIONS & RULES

29 U.S.C. § 216(b) ........................................................................................................... *passim*

29 C.F.R. § 541.100 (2016) .............................................................................................. *passim*

84 Fed. Reg. 51,230 (Sept. 27, 2019), *as codified at* 29 C.F.R. 541.100 .......................................2

F.R.C.P. Rule 23 .......................................................................................................13, 14, 28, 31

## OTHER AUTHORITIES

Jess Krochtengel, *Chipotle Seeks Contempt Order Over DOL Overtime Rule Suit*,
   Law360 (Aug. 1, 2017, 5:20pm),
   https://www.law360.com/articles/950290/chipotle-seeks-contempt-order-over-
   dol-overtime-rule-suit ...........................................................................................................31

Daniel Wiessner, *Judge Holds Plaintiff in Chipotle Overtime Case in Contempt*,
Reuters (Mar. 19, 2018, 8:50pm),
https://www.reuters.com/article/employment-overtime/judge-holds-plaintiff-
in-chipotle-overtime-case-in-contempt-idUSL1N1R201K?edition-redirect=in
Reuters ............................................................................................................31

Mindy L. Rattan, *Court Grills Attorneys for Suing Chipotle*, BloombergLaw
(Mar. 29, 2018, 2:13pm), https://news.bloomberglaw.com/business-and-
practice/court-grills-attorneys-for-suing-chipotle-1; ............................................31

## INTRODUCTION

Plaintiffs Carmen Alvarez and Asher Guni ("Plaintiffs") and Defendants Chipotle

Mexican Grill, Inc. and Chipotle Services, LLC ("Chipotle" or "Defendant") have agreed to

resolve this wage and hour lawsuit for a payment of $15,000,000.00 to the Plaintiffs and

members of a collective of similarly situated employees, subject to this Court's approval.  The

settlement, which follows vigorously contested litigation in this Court and in related proceedings

in the Eastern District of Texas and the Fifth Circuit, satisfies the criteria for approval of a Fair

Labor Standards Act ("FLSA") collective action settlement and will provide a good, risk-free

recovery to the approximately 4,838 workers who stand to benefit.

Plaintiffs respectfully request that the Court issue an order: (1) approving the terms of the

settlement set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement"),

attached as Exhibit 1 to the Declaration of Justin Swartz ("Swartz Decl.");[1] (2) approving the

proposed Notice of Settlement ("Notice") and Consent to Join Form ("Claim Form") (attached as

Exhibits A and B to the Settlement Agreement) and directing its distribution; (3) approving

Service Awards for the named Plaintiffs; (4) approving Plaintiffs' Counsel's request for payment

of attorneys' fees and reimbursement of costs and expenses; and (5) dismissing the lawsuit.

Chipotle does not oppose this motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Claims

Plaintiffs are former employees of Chipotle who worked as apprentices at Chipotle

restaurants.  ECF No. 95 (Amended Complaint ("Am. Compl.") ¶¶ 9-10; Swartz Decl. ¶ 23.

---

[1]      Unless otherwise indicated, all exhibits are attached to the Swartz Declaration, and all capitalized terms have the definitions set forth in the Settlement Agreement.

Plaintiffs allege that Chipotle misclassified them and other apprentices at Chipotle's restaurants across the United States, except in New York, California, and Texas, as exempt under the FLSA and failed to pay them overtime compensation for working more than 40 hours per week. Plaintiffs contend that Chipotle is not entitled to an exemption affirmative defense for two reasons: (1) Chipotle did not pay apprentices the minimum salary level required by the FLSA, and (2) apprentices' job duties failed to meet the "duties test" required for an overtime exemption under the FLSA and the New Jersey wage laws. *See* Am. Compl. ¶¶ 26-63. Chipotle denies these allegations and contentions.

With respect to the minimum salary level, Plaintiffs raise a novel legal theory. They claim that the governing minimum salary level for exempt employees, which is set forth in 29 C.F.R. § 541.100 (2016) ("2016 Overtime Rule"),[2] that the minimum salary level promulgated by the 2016 Overtime Rule took effect on December 1, 2016, and that it raised the minimum salary level from $23,660.00 to $47,476.00 per year. ECF No. 95 ¶¶ 23-24. Because Chipotle did not pay its apprentices a salary of at least $47,476 per year, Plaintiffs claim, Chipotle cannot prove its overtime exemption defense.

In contrast, Chipotle argues that the 2016 Overtime Rule never took effect. It takes the position that in March 2014, President Obama directed the DOL to revise the FLSA's white collar exemptions. *Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520, 524 (E.D. Tex. 2016). Chipotle argued that, if implemented as proposed, the rule would have increased the minimum for exempt employees' salaries from $455 per week ($23,660 annually) to $913 per week

---

[2]     Effective January 1, 2020, the DOL promulgated a new regulation reducing the salary level for exempt employees under the FLSA from $47,476 to $35,568 and rescinding the 2016 Overtime Rule. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51,230 (Sept. 27, 2019), *as codified at* 29 C.F.R. 541.100.

($47,476 annually).  *Id.*  However, prior to the effective date, Chipotle says, a collection of states filed suit against the DOL, among others, challenging the validity of the 2016 Overtime Rule. *See generally Nevada*, 218 F. Supp. 3d 520.  Chipotle claims that on October 12, 2016, those plaintiffs moved for emergency preliminary injunctive relief to prevent implementation of the 2016 Overtime Rule in the Eastern District of Texas, Case No. 16 Civ. 731.  Chipotle argues that the Eastern District of Texas granted the motion for preliminary injunction on November 22, 2016, holding that the DOL likely lacked statutory authority to enact the 2016 Overtime Rule and that its enactment would cause irreparable harm if implemented on December 1, 2016. *Nevada*, 218 F. Supp. 3d at 534.

According to Plaintiffs, however, the 2016 Overtime Rule was duly promulgated pursuant to the requirements of the APA and the Texas court's decision only enjoined enforcement of the 2016 Overtime Rule by the Department of Labor and, therefore, the Texas court did not stay the effective date or otherwise prevent the 2016 Overtime Rule from taking effect.  *See* ECF No. 95 ¶¶ 32-34; ECF No. 65 at 7-13.  This is an issue of first impression.

With respect to apprentices' job duties, Plaintiffs allege that their, and other apprentices', primary job duties are manual in nature, including food preparation and customer service, similar to the job duties of Chipotle employees who are paid on an hourly basis and eligible for overtime pay.  ECF No. 95 ¶¶ 58-60.  Plaintiffs and other apprentices spend the majority of their shifts "working the assembly line, filling orders for customers, preparing food, operating the cash register, and preparing items for the assembly line, including salsa, guacamole, chopped vegetables, and other food items."  *Id.* ¶ 57.  Apprentices did not discipline, set the schedule for, or hire or fire—or make recommendations to hire or fire—other employees, and had no

3

administrative or executive authority whatsoever.  *Id.* ¶ 61-63.  Therefore, Plaintiffs' claim that

the duties of apprentices do not exempt them from being eligible for overtime compensation.

Chipotle contests Plaintiffs' characterization of the duties of apprentices.

## II.     Procedural History

### A.     Complaint and Answer

On June 7, 2017, Plaintiff Carmen Alvarez filed this action on behalf of herself and

similarly situated apprentices in New Jersey under the FLSA and New Jersey law.  ECF No. 1.

On July 26, 2017, Chipotle filed an Answer to the Complaint.  ECF No. 5.

### B.     Contempt Proceedings in Texas and the Fifth Circuit

On August 1, 2017, instead of moving against the Complaint in this court, Chipotle filed

a motion for contempt against Plaintiff Alvarez and her counsel in *Nevada v. U.S. Dep't of*

*Labor*, a lawsuit pending in the Eastern District of Texas (the "Texas court") to which neither

Plaintiffs nor Chipotle were parties.  *See Nevada v. U.S. Dep't of Labor*, No. 16 Civ. 00731 (E.D.

Tex.).  Chipotle asked the Texas court to hold Plaintiff Alvarez and her counsel in contempt for

basing her claim on the 2016 Overtime Rule, which Chipotle claimed had been invalidated by

the Texas court.  Swartz Decl. ¶ 30.

On November 6, 2017, the Texas court held a hearing on the contempt motion, which

Plaintiff Alvarez and her counsel traveled to Texas to attend.  Swartz Decl. ¶ 31; Declaration of

Plaintiff Carmen Alvarez ("Alvarez Decl.") ¶ 8.  Plaintiff Alvarez and her counsel were

compelled to hire outside local counsel to represent them before the Texas court.  Swartz Decl.

¶ 31.  Alvarez and her counsel argued, among other things, that the Texas court did not have

jurisdiction over them and that they were not bound by the Texas court's injunction.  *Id.*

4

At the hearing, the Texas court announced its intention to hold Plaintiff Alvarez and her counsel in contempt unless they withdrew their claim based on the 2016 Overtime Rule in this Court. Swartz Decl. ¶ 32; Alvarez Decl. ¶ 9. Despite the personal and professional jeopardy that Plaintiff and her counsel faced, they declined to withdraw this claim. Swartz Decl. ¶ 32. The parties agreed to stay this action pending the proceedings in Texas, which this Court ordered on November 14, 2017. ECF No. 29.

The Texas court issued an order finding Plaintiff Alvarez and her counsel in contempt on March 19, 2018. *Nevada v. U.S. Dep't of Labor*, 321 F. Supp. 3d 709, 729 (E.D. Tex. 2018), *rev'd sub nom. Texas v. Dep't of Labor*, 929 F.3d 205 (5th Cir. 2019). Plaintiff Alvarez and her counsel appealed the contempt ruling. Upon a joint request from the parties, this Court extended the stay of this action pending resolution of the appeal. ECF No. 37.

The Fifth Circuit vacated the Texas court's contempt order on July 2, 2019, holding that Plaintiff Alvarez and her counsel "were not in privity with the DOL and not otherwise bound by the injunction." *Texas v. Dep't of Labor*, 929 F.3d 205, 213 (5th Cir. 2019). The court explained that "there was no basis for the district court's exercise of personal jurisdiction over [Plaintiff and her counsel]" and that Chipotle's contempt motion "lack[ed] authoritative support." *Id.* at 214.

In support of its position in this litigation, Chipotle notes that the Fifth Circuit left untouched the district court's injunction enjoining the 2016 Overtime Rule in the Texas Action. Further, Chipotle notes that the Fifth Circuit did not review district court's order granting summary judgment in those plaintiffs' favor, which Chipotle says invalidated the 2016 Overtime Rule.

### C.      Lifting of Stay and Litigation

After two years litigating the contempt proceeding in Texas and the Fifth Circuit, the stay in this Court lifted.  ECF No. 35.  The parties appeared for a scheduling conference and the Court entered a Scheduling Order on October 2, 2019.  ECF No. 56.

On October 4, 2019, Chipotle filed a Motion for Partial Judgment on the Pleadings.  ECF No. 57.  In its motion, Chipotle claimed that Plaintiff Alvarez's theory that she was misclassified based on the 2016 Overtime Rule's salary basis level failed as a matter of law because the 2016 Overtime Rule never took effect.  *Id.*  Plaintiff Alvarez filed her brief in opposition on November 4, 2019, arguing that the Texas court's decision invalidating the rule was not binding on the New Jersey court and, in any event, the 2016 Overtime Rule was a proper exercise of agency authority.  ECF No. 64.  Chipotle filed its reply brief on November 12, 2019.  ECF No. 70.

In parallel, on October 9, 2020, Plaintiff Alvarez filed a Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b).  ECF No. 58.  Plaintiff sought authorization from the Court to send notice to apprentices who were employed by Chipotle in any state except California, New York, and Texas.  ECF No. 58-1 at 10.  Chipotle filed its brief in opposition on November 4, 2019, *see* ECF No. 65, and Plaintiff Alvarez filed her reply brief on November 12, 2019.

On November 4, 2019, Plaintiff Alvarez moved to amend the Complaint to name an additional plaintiff, Asher Guni, and formally expand the proposed collective to cover Chipotle apprentices outside of New Jersey.  ECF No. 66.  Chipotle filed its opposition brief on November 18, 2019, ECF No. 75, and Plaintiff Alvarez filed her reply brief on November 25, 2019.  ECF No. 76.

On November 8, 2019, Chipotle moved to stay a decision on Plaintiff's Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) until the Court had decided Chipotle's motion for partial judgment on the pleadings.  ECF No. 68.  Plaintiff Alvarez opposed the request to stay.  ECF No. 74.  Chipotle filed its reply brief on November 25, 2019.  ECF No. 77.

On November 7, 2019, the parties exchanged discovery requests.  Swartz Decl. ¶ 36.  On June 18, 2020, the Court granted Plaintiff Alvarez's motion to amend.  ECF No. 94.  On June 30, 2020, Plaintiffs docketed their Amended Complaint, which joined Plaintiff Guni to the action and expanded the putative collective to apprentices nationwide except those employed in New York, California, and Texas.  Am. Compl. ¶ 95.

### D.   Settlement Negotiations

In early December 2019, the parties began discussing the possibility of scheduling a private mediation.  Swartz Decl. ¶ 37.  The parties requested that the Court continue the deadlines in the scheduling order as they explored whether a private mediation would be productive.  ECF Nos. 82, 84, 86, 88.  In March 2020, the parties agreed to attend private mediation and jointly requested a stay of all discovery deadlines.  ECF No. 90.

The parties attended two full-day private mediation sessions with David Geronemus of JAMS, a well-regarded, experienced mediator, on June 23, 2020, and September 29, 2020.  Swartz Decl. ¶ 38.  In advance of the first mediation session, Chipotle produced data for New Jersey apprentices including dates of employment, salary information, and bonus history, which Plaintiffs' Counsel analyzed to construct a damages model and determine the size of the potential collective.  *Id.*  The parties then prepared detailed mediation statements, explaining each party's perspective on the relevant facts, the strengths and weaknesses of the parties' claims and defenses, and the potential damages at stake.  *Id.* ¶ 38.  The parties reached an impasse after the

7

first mediation session.  *Id.* ¶ 39.  Therefore, the parties agreed that Chipotle would collect and produce data for the nationwide collective alleged in the current Complaint to allow the parties to calculate damages for the expanded group.  *Id.*  Chipotle produced the relevant data in advance of the second mediation.  *Id.* ¶ 40.  The parties each analyzed the new dataset, prepared damage models, and met and conferred several times about the data in preparation for mediation.  *Id.*

At the second mediation session, through extensive additional arms'-length negotiations, the parties reached an agreement to resolve Plaintiffs' claims and those of a nationwide collective of apprentices and executed a memorandum of understanding.  *Id.* ¶ 41.  Following the mediation, the parties continued to negotiate and finalized the terms of the settlement in the formal Settlement Agreement, executed on February 18, 2021.  *Id.*

## SETTLEMENT TERMS

## I.   The Settlement Fund and Eligible Collective Members

The Settlement Agreement establishes a fund of $15,000,000.00 ("Maximum Gross Settlement Amount") from which Eligible Settlement Collective Members may claim settlement awards.  The Maximum Gross Settlement Amount encompasses payments for Court-approved service awards, attorneys' fees and expenses, Settlement Administrator's fees, payroll taxes, and collective member awards.  Ex. 1 (Settlement Agreement ("SA")) ¶¶ 1.17, 3.1(A).  Eligible Settlement Collective Members include all apprentices employed in New Jersey from June 7, 2014, through July 15, 2019, and in all other states (excluding California, New York, and Texas) from June 18, 2017, through August 25, 2020.  *Id.* ¶ 1.11.  The settlement covers approximately 4,838 Eligible Collective Members and 260,471 Eligible Settlement Collective Member workweeks.  *Id.* ¶¶ 1.11, 2.6.

## II.     Claims Procedure

The parties negotiated a simple claims process with robust notice procedures and no

barriers to participation.  The settlement requires Chipotle to provide the Settlement

Administrator with a list, in electronic form, of the names, last known addresses, last known

email addresses, last known telephone numbers, dates of employment, and last locations worked

for all Eligible Settlement Collective Members.[3]  *Id.* ¶ 2.6.  The Settlement Administrator will

then calculate the workweeks worked and send notice using *three* separate methods – via text

message, email, *and* U.S. First Class mail.  The Settlement Administrator will also include a

postage pre-paid return envelope in the U.S. mail notice.  *Id.* ¶¶ 2.6, 2.7.  The Settlement

Administrator will also establish a Settlement Website at which Eligible Settlement Collective

Members can obtain copies of the Notice and submit their Claim Forms.  *Id.* ¶ 2.9.  The

Settlement Website will also provide answers to "frequently asked questions," contact

information for the Settlement Administrator and Plaintiffs' Counsel, and a form for Eligible

Settlement Collective Members to submit claims and update their contact information.  *Id.*

Through all of these steps, Plaintiffs and their counsel have ensured that Eligible Settlement

Collective Members will have every chance to participate in the settlement and collect their

awards.

The Settlement Notice will inform Eligible Settlement Collective Members of the claims,

the settlement terms, their individual settlement allocations, the release, and their right to

participate by signing and returning an enclosed Claim Form.  *Id.* ¶ 2.7.  Eligible Settlement

---

[3]      The Settlement Administrator will count the workweeks worked for Eligible Settlement
Collective Members who worked in New Jersey from June 7, 2014, and from June 18, 2017, for
Eligible Settlement Collective Members who worked elsewhere, through the date of settlement
approval or August 25, 2021, whichever is earlier.  SA ¶ 2.6.

Collective Members may return the Claim Form by any of four methods – U.S. mail, email, fax, or online through the settlement website. *Id.* If any Settlement Notices are returned undeliverable, the Settlement Administrator must make reasonable efforts to find updated contact information and re-send the Notice. *Id.* ¶ 2.11. Eligible Settlement Collective Members will have 60 days from the mailing of the initial Notice to submit Claim Forms, or 45 days from the last re-mailing, whichever is later. *Id.* ¶ 2.17.

To ensure as much participation as possible, the Settlement Administrator will send a reminder via U.S. First Class mail 30 days after the initial mailing. *Id.* ¶ 2.10. Eligible Settlement Collective Members who elect not to return a Claim Form will not receive a settlement check and will not release any claims. *Id.* ¶ 4.2.

The Settlement Administrator will mail checks to all Participating Settlement Collective Members (Eligible Settlement Collective Members who returned claim forms) within 10 days after Chipotle has deposited the funds for the settlement into an account established by the Settlement Administrator. *Id.* ¶ 3.4(B). If any Participating Settlement Collective Members have not cashed their checks within 60 days after it was mailed, the Settlement Administrator will send a letter and email reminding them to do so. *Id.* ¶ 3.1(C). Unclaimed funds, including any checks not cashed after 180 days after they were mailed, will be returned to Defendant. *Id.*

## III.    Allocation Formula

The individual settlement awards will be determined based on weeks worked as a Chipotle apprentice. Each Eligible Settlement Collective Member shall be assigned one point for each week worked as an Apprentice from June 7, 2014, for Eligible Settlement Collective members who worked in New Jersey, and from June 18, 2017, for Eligible Settlement Collective Members who worked in states other than New Jersey, California, New York, and Texas. *Id.*

¶ 3.4(C)(1).  All points assigned to Eligible Settlement Collective Members will be totaled and constitute the denominator.  *Id.* ¶ 3.4(C)(3).  The denominator will then be divided into the number of points allocated to each Eligible Settlement Collective Member to calculate each Eligible Settlement Collective Member's proportionate share of the Revised Gross Settlement Amount.[4]  *Id.*  After the number of Participating Settlement Collective Members is known, the actual settlement amounts for each Participating Settlement Collective Member will be calculated by multiplying that Collective Member's proportionate share by the Revised Gross Settlement Amount.  *Id.*

## IV.    Released Claims

Participating Settlement Collective Members will sign narrow wage and hour releases that do not compromise any other claims, employment or otherwise.  Participating Settlement Collective Members who worked in New Jersey will release FLSA and state-law wage and hour claims arising from their employment as apprentices from June 7, 2014, through the date of settlement approval or August 25, 2021, whichever is earlier.  *Id.* ¶ 1.26.  Participating Settlement Collective Members who worked outside of New Jersey will release FLSA and state-law wage and hour claims arising from their employment as apprentices from June 18, 2017, through the date of settlement approval or August 25, 2021, whichever is earlier.  *Id.*  By returning a Consent to Join Settlement and Claim Form and receiving a Settlement Check, all Participating Settlement Collective Members forever and fully release Chipotle from all Released Claims, regardless of whether the check is cashed or not.  *Id.* ¶ 4.1.  Eligible Settlement

---

[4]     The Revised Gross Settlement Amount is the remainder of the Maximum Gross Settlement Amount after deductions/payments for: (1) the Settlement Administrator's fees and costs not to exceed $52,000; (2) Court-approved attorneys' fees and costs for Plaintiffs' Counsel; and (3) Court-approved Service Awards to the Named Plaintiffs.  SA ¶ 1.27.

Collective Members who do not return executed claim forms will not release any claims.  *Id.*
¶ 4.2.

## V.     Service Awards

The Settlement Agreement provides for, and Plaintiffs seek Court approval of, three
service awards.  *Id.* ¶ 3.3.  Plaintiffs seek approval of a $30,000 service award to Plaintiff
Alvarez in recognition of her extraordinary commitment to the collective, including litigating
and appealing an unprecedented order which held her in contempt for the allegations in the
Complaint she filed in this Court.  *See infra* Argument, Part V.  Plaintiffs also seek approval of a
$10,000 service award to Plaintiff Guni, who joined as an additional named plaintiff, leading to
the amendment to include apprentices in states beyond New Jersey, and a $2,500 service award
to Opt-in Plaintiff Joie Dickerson who provided a declaration in support of Plaintiffs' motion for
Court-authorized notice to the collective.  Each of these individuals assumed risk by stepping
forward and provided critical assistance that led to vindicating the rights of the more than 4,000
apprentices nationwide who stand to benefit from the settlement.  Swartz Decl. ¶¶ 61; Alvarez
Decl. ¶¶ 7-11; Declaration of Plaintiff Asher Guni ("Guni Decl.") ¶ 6.

## VI.    Settlement Claims Administration

Plaintiffs' Counsel has retained A.B. Data Ltd. ("A.B. Data"), an experienced settlement
claims administrator, as the Settlement Administrator.  SA ¶ 1.29; Swartz Decl. ¶ 53.  Courts
have routinely approved A.B. Data as a settlement administrator.  Swartz Decl. ¶ 53.  Plaintiffs'
Counsel negotiated a cap on A.B. Data's fees of $52,000, which will be paid from the Maximum
Gross Settlement Amount.  SA ¶ 1.27; *see also* Swartz Decl. ¶ 53.

## VII.    Attorneys' Fees and Expenses

Subject to Court approval, Plaintiffs' Counsel will be paid one-third of the settlement funds as attorneys' fees, in addition to the reimbursement of actual out-of-pocket expenses in the amount of $327,481.48 incurred litigating and resolving this matter.  *See* SA ¶ 3.2(A); Swartz Decl. ¶ 68; Declaration of Joseph Sellers ("Sellers Decl.") ¶¶ 16, 23; Declaration of Glen Savits ("Savits Decl.") ¶ 9.  This fee award is justified by the excellent result that Plaintiffs' Counsel obtained for Plaintiffs and other apprentices, the novel legal claims that Plaintiffs' Counsel advanced, the significant risks that Plaintiffs' Counsel took, the time that Plaintiffs' Counsel spent, and the harm that Plaintiffs' Counsel suffered.  *See infra* Part VI.

## ARGUMENT

## I.    A FLSA Collective Should be Established for Settlement Purposes.

Under the FLSA, a collective action "may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  Here, Plaintiffs seek to establish an FLSA collective for settlement purposes only.  The proposed collective is made up of all persons employed by Chipotle as apprentices in New Jersey from June 7, 2014 through July 15, 2019 and in all other states, excluding California, New York, and Texas, from June 18, 2017, through August 25, 2020.  SA ¶ 1.11 ("Eligible Settlement Collective Members").

All Eligible Settlement Collective Members have identical claims under the FLSA—i.e., that Chipotle misclassified them as exempt and failed to pay them overtime wages for hours worked over 40 in a week.  Am. Compl. ¶¶ 26-63.  Members of the proposed collective shared the same primary duties and worked a significant number of overtime hours, such that Chipotle's defenses apply equally to all collective members.  *Bredbenner v. Liberty Travel, Inc.*, No. 09 Civ. 905, 2011 WL 1344745, at *17 (D.N.J. Apr. 8, 2011) (more stringent Rule 23 certification

13

warranted where collective members held the same job, were subject to the same conditions

regarding overtime, and had the same claims for relief under the FLSA). Accordingly,

certification of the proposed settlement collective is appropriate.

## II.     A One-Step Approval Process Is Standard for FLSA Settlements.

In settlements of FLSA collective actions like this case, where all settlement recipients

will consent to join this action personally, it is routine for courts to employ a one-step approval

process, rather than the two-step process warranted by classes certified pursuant to under Rule 23

which include absent class members who were not required to consent to join the action.[5] The

settlement of this case does not implicate the due process rights of any absent members of classes

certified pursuant to Rule 23. *See Lusardi v. Lechner*, 855 F.2d 1062, 1070 (3d Cir. 1988).

Unlike Rule 23 class action settlements where absent class members can release claims without

participating in the settlement, here, the only individuals whose rights are affected are those who

affirmatively decide to participate in the settlement. Only individuals who submit a claim form

---

[5]     *See, e.g., Alvarez v. BI Incorporated*, No. 16 Civ. 2705, 2020 WL 1694294, at *4 (E.D. Pa. Apr. 6, 2020); *Clarke v. Flik Int'l Corp.*, No. 17 Civ. 1915, 2020 WL 747067, at *3 (D.N.J. Feb. 14, 2020); *Herbin v. The PNC Fin. Servs. Grp.*, Nos. 19 Civ. 696, 20 Civ. 58 (W.D. Pa. Jan. 27, 2020), ECF No. 25 (granting approval of FLSA settlement in one step); *Cruz v. JMC Holdings, Ltd.*, No. 16 Civ. 9321, 2019 WL 4745284, at *5 (D.N.J. Sept. 30, 2019); *Jones v. SCO, Silver Care Operations LLC*, No. 13 Civ. 7910, 2019 WL 2022371, at *2 (D.N.J. May 8, 2019); *In re Chickie's & Pete's Wage & Hour Litig.*, No. 12 Civ. 6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014); *Dino v. Pennsylvania*, No. 08 Civ. 01493, 2013 WL 4041681, at *5 (M.D. Pa. Aug. 8, 2013); *Brumley v. Camin Cargo Control, Inc.*, No. 08 Civ. 1798, 2012 WL 1019337, at *1-2 (D.N.J. Mar. 26, 2012) (approving in part collective action settlement in one step). One-step approvals are the norm outside of this Circuit, as well. *See, e.g., Weston v. TechSol, LLC*, No. 17 Civ. 0141, 2018 WL 4693527, at *1 (E.D.N.Y. Sept. 26, 2018) (granting motion for one-step settlement approval); *Knox v. Jones Grp.*, No. 15 Civ. 1738, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017) (same); *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17 Civ. 10219, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) (same); *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15 Civ. 10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) (same); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 00738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014) (same); *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010) (same).

to participate in the settlement will receive a settlement payment and release their claims covered by the settlement.  SA ¶ 4.1.  Any Eligible Settlement Collective Member who chooses not to participate will not release any claims.  *Id.* ¶ 4.2.

## III.   The Settlement Is Fair and Should Be Approved.

Courts determine whether to approve a FLSA collective action settlement based on whether it is a "fair, reasonable and adequate" resolution of a bona fide dispute over FLSA provisions.  *Bredbenner*, 2011 WL 1344745, at *10, 18; *see also In re Chickie's & Pete's Wage & Hour Litig.*, 2014 WL 911718, at *2.  Courts also should confirm that the settlement does not "frustrate" the purposes of the FLSA, such as through an overbroad release of claims.  *Cruz*, 2019 WL 4745284, at *3; *Brumley*, 2012 WL 1019337, at *4.  Further, in evaluating whether a settlement is fair, courts in this Circuit have often considered the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), which, as explained below, support settlement approval.

### A.   The Settlement Resolves a Bona Fide Dispute.

A settlement "resolves a bona fide dispute when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute'" *Chickie's & Pete's*, 2014 WL 911718, at *2 (alteration in original) (quoting *Lynn's Food Stores, Inc.* v. *United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).  "An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial."  *Bettger v. Crossmark, Inc.*, No. 13 Civ. 2030, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015); *see also Brumley*, 2012 WL 1019337, at *2 (providing that bona fide disputes must concern factual and not legal issues).  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.  *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.  Here, the parties vigorously disputed whether Chipotle's classification of

15

Case 2:17-cv-04095-KM-JBC   Document 107-1   Filed 02/26/21   Page 25 of 49 PageID: 1155

Plaintiffs and other apprentices was proper and willful, as well as how many hours of overtime apprentices worked.  Swartz Decl. ¶ 28.  The parties reached the settlement in recognition of the uncertain legal and factual issues involved.  *Id.* ¶ 54.

### B.    The Settlement is Consistent with the FLSA's Purpose.

The terms of the agreement are fair and consistent with the FLSA's purpose.  The settlement was negotiated fairly, at arm's length with the assistance of an experienced private mediator.  *Id.* ¶ 54; *see also Bredbenner*, 2011 WL 1344745, at *10 ("Participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'" (quoting *Bert v. AK Steel Corp.*, No. 02 Civ. 467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008))).

Additionally, the release provided by the Settlement Agreement is consistent with the purposes of the FLSA because the release relates specifically to the Eligible Settlement Collective Members' federal and state wage-and-hour claims which were at issue or could have been brought in this action.  SA ¶ 1.26.

### C.    The Relevant *Girsh* Factors Support Settlement Approval.

The *Girsh* approval factors include (1) the complexity, expense and likely duration of the litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the ability of the defendants to withstand a greater judgment; (4) the risks of establishing liability; the risks of establishing damages; the risks of maintaining the collective action through the trial; and (5) the range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the attendant risks of litigation.  *Girsh*, 521 F.2d at 157.  All factors support approval.

16

### 1.      Complexity, Expense, and Duration of the Litigation.

This matter involves complex legal issues and difficult fact issues and would have

required very expensive and lengthy litigation had it not settled.  With respect to legal issues,

Plaintiff advanced a novel primary argument for defeating Chipotle's exemption defenses.  *See*

*supra* Factual and Procedural Background, Part I.  Plaintiffs' alternate legal theory, that Chipotle

could not establish that apprentices performed the duties necessary to qualify for its exemption

defense, involves complex factual questions about what apprentices' primary job responsibilities

were, how often they performed particular tasks, what authority they had, and how closely they

were supervised.  *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981)

("FLSA claims typically involve complex mixed questions of fact and law. . . . [that] must be

resolved in light of volumes of legislative history and over four decades of legal interpretation

and administrative rulings."); *Brumley*, 2012 WL 1019337, at *11 (noting that "FLSA claims and

wage-and-hour law enforcement through litigation has been found to be complex").

Finally, continued litigation of this case would have been very expensive and long.

Although there are many examples in this District and elsewhere, the most direct comparison is

to *Scott v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333 (S.D.N.Y), which also challenged

Chipotle's exemption defenses on a nationwide basis, but covered a different period and did not

include the novel salary basis theory that Plaintiffs advanced here.  In *Scott*, more than 500

apprentices joined the case, the parties took more than 100 depositions, filed more than 20

motions, attended 22 court conferences and hearings, litigated an appeal to the Second Circuit,

and reached a settlement in principle only after briefing regarding Chipotle's petition for writ of

certiorari, in which Chipotle asked the Supreme Court to grant review of the Second Circuit

decision.  *See Chipotle Mexican Grill, Inc. v. Scott*, No. 20-257 (U.S.)  All of this litigation only

got the parties through the class certification stage, *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020) (reversing district court order decertifying collective and affirming denial of class certification), and would have been necessary to repeat in this litigation for a different class period.

### 2.      Stage of Proceeding.

The parties engaged in sufficient litigation and information exchange to fully evaluate the relative strength of the claims and defenses and reach a settlement.  Prior to staying this case to attend mediation, the parties engaged in significant motion practice relating to conditional certification under 29 U.S.C. § 216(b), the scope of the collective, and the merits of the 2016 Overtime Rule.  *See* Swartz Decl. ¶¶ 35, 72, 84; *supra* Factual and Procedural Background, Part II.C.  Ahead of mediation, Chipotle produced detailed personnel data to further inform the parties regarding the size of the potential collective and the scope of damages.  Swartz Decl. ¶ 40.  While the parties had exchanged only initial formal discovery requests and had not completed the exchange of formal discovery, the parties exchanged sufficient informal discovery to adequately inform settlement negotiations.  *Id.*

### 3.      Chipotle's Ability to Withstand a Greater Judgment.

This factor is neutral.  Collectability was not a factor in the settlement negotiations and, therefore, Plaintiffs provided no discount for risk of collection.  Swartz Decl. ¶ 59.  Although Chipotle may have been able to withstand a greater judgment, this alone does not suggest that the settlement is unfair, especially where the other factors so clearly favor settlement at this juncture. *Singleton v. First Student Mgmt. LLC*, No. 13 Civ. 1744, 2014 WL 3865853, at *6 (D.N.J. Aug. 6, 2014).

### 4.      Risks of Establishing Liability.

Moreover, the settlement recovery is particularly reasonable in light of the significant litigation risks Plaintiffs faced in litigating an issue of first impression: whether the 2016 Overtime Rule took effect, enabling Plaintiffs to assert overtime claims under the salary-basis theory.  Given the novelty of this issue, there was no guarantee that Plaintiffs would succeed in proving that the 2016 Overtime Rule became effective, as scheduled, on December 20, 2016 in light of the preliminary injunction issued by the Texas court.  Although Plaintiff Alvarez was confident in her position, and there was significant administrative law authority supporting her claim, the 2016 Overtime Rule had not been the subject of any judicial interpretation, other than by the Texas court, and there were legitimate arguments presented by both sides as to whether the 2016 Overtime Rule became effective.  *Compare* ECF Nos. 57 (Chipotle Mot. for Partial Judgment on the Pleadings) at 10 (citing authority in support of position that "federal courts are vested with the power to issue equitable relief with a nationwide reach"); *with* ECF No. 64 (Pl.'s Opp. Br.) at 15 (discussing authority showing that "courts do not bind co-equal courts").  Given the risks Plaintiffs faced in asserting liability based on the salary basis theory, this settlement represents a significant achievement.  The amount of the settlement recovery is also reasonable in light of the likelihood of appellate review of any decision on this novel issue that would introduce further uncertainty and delay.

In addition, continuing this case through trial on either the salary-basis test or the duties test necessarily involves some risk at each stage of the litigation.  Plaintiff Alvarez filed a motion for conditional certification of the New Jersey claims on October 9, 2019, *see* ECF No. 58, which was rendered moot by the Court's order allowing Plaintiffs to file an amended complaint with allegations nationwide in scope, except for Chipotle facilities located in Texas, California,

and New York.  ECF No. 94.  To proceed with litigation national in scope, Plaintiffs would seek conditional certification of the nearly nationwide FLSA collective.  If successful, Plaintiffs would likely face an attempt later in the litigation by Chipotle to decertify the collective.  *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (describing the FLSA's two-step process for collective certification).  Although Plaintiffs and their counsel believe the weight of the evidence would show that Plaintiffs and other apprentices were similarly situated and could withstand any attempts at decertification, their success on these issues is not guaranteed.  If the case proceeds to trial, the merits of the duties test would involve significant risks for Plaintiffs as to both liability and damages, because the exempt status of apprentices under the FLSA is highly contextual.  *See Oddo v. Bimbo Bakeries USA, Inc.*, No. 16 Civ. 04267, 2017 WL 2172440, at *13 (D.N.J. May 17, 2017) (collecting cases).

Finally, although the Named Plaintiffs' claims are not subject to mandatory arbitration, many of the workers covered by this settlement are.  *See* ECF No. 65 at 14 (Chipotle noting that beginning in August 2014, "Chipotle implemented an arbitration program applicable to all new hires").  Many members of the proposed nationwide collective, therefore, faced substantial additional risk that they may have been barred from participating in this case and maybe even barred from receiving notice of it.

### 5.      Reasonableness of Settlement Fund.

The settlement provides substantial value to collective members now, which is far better than enduring the long, arduous, and risky prospect of an uncertain recovery after several more years of discovery, motion practice, a complex trial, and likely appeals.  Swartz Decl. ¶¶ 55.

The Maximum Gross Settlement Amount is reasonable, especially in light of the risks that Plaintiffs faced and the delay a trial would entail.  The average net Settlement Amount for

each collective member is approximately $1,975.  *Id.* ¶ 56.  Based on an estimate that members of the collective were denied payment of an average of 10 overtime hours each week, an estimate Chipotle contested, for the two-year period provided by the statute of limitations,[6] without proof of willfulness, the amount of funds payable to members of the collective in settlement represents approximately 73% of the total wages they could recover after prevailing at trial.  *Id.* ¶ 56.  Even if Plaintiffs were successful in proving that Chipotle violated the FLSA willfully, and therefore were entitled to a third year of lost wages, an outcome that is far from certain, members will receive through this settlement approximately 56% of the overtime wages they could have been awarded at trial.  *Id.* ¶ 57.  The payment in this settlement, therefore, represents a larger recovery of lost wages than many settlements of other collective actions in this Circuit.  *See, e.g.*, *Cruz*, 2019 WL 4745284, at *6 & n.4 (approving settlement representing 43% of total recovery and collecting cases).

By Chipotle's estimate, on the other hand, even if Plaintiffs were to establish at trial that apprentices should have been classified as non-exempt (which Chipotle strenuously contested), the lost wages of the collective could have been much smaller than Plaintiffs estimate.  Swartz Decl. ¶ 58.  Plaintiffs would have to overcome defenses likely advanced by Chipotle that the average weekly overtime worked was much less than the Plaintiffs estimate, that routine periods of leave decreased the number of workweeks during which Plaintiffs worked overtime, that the fluctuating workweek method of calculating overtime wages applies, and that, in any event, any violation of the law was not willful.  *Id.*  Each of these factors would reduce significantly the

---

[6]   For New Jersey apprentices, the two-year statute of limitations begins on June 7, 2015, two years prior to the filing of the Complaint.  ECF No. 1; *see also* Swartz Decl. ¶ 56.  For apprentices that worked outside New Jersey, the two-year statute of limitations begins on June 18, 2018, two years prior to the Court's order granting Plaintiffs' leave to amend the Complaint. ECF No. 94.

amounts of overtime for which the Plaintiffs could recover payment.  Based on these anticipated

risks, the result Plaintiffs achieved provides substantial value to Collective Members.

## IV.    The Proposed Notice Is Adequate and Should Be Approved.

In FLSA collective actions, "accurate and timely notice" allows putative collective

members to "make informed decisions about whether to participate."  *Hoffman–La Roche, Inc. v.*

*Sperling*, 493 U.S. 165, 170 (1989).  The proposed Notice here sufficiently informs Eligible

Settlement Collective Members of the distribution process for settlement payments, the steps

they must take to receive a settlement payment, the consequences of non-participation, the

monetary amount to which they are entitled under the settlement, the scope and mechanism of

the release of claims, the time they have to cash their Settlement Checks, the request for fees and

reimbursement of costs, and other terms of the Settlement Agreement.  *See, e.g.*, *Weston*, 2018

WL 4693527, at *9 (approving FLSA notice that informed recipients of the FLSA allegations;

the total settlement amount, including "the amount being paid for attorneys' fees and expenses,

the cost of administration, and the service awards to the named plaintiffs"; the allocation method;

and other relevant terms); *Bozak*, 2014 WL 3778211, at *3 (approving FLSA notice providing

notice of settlement terms and options facing collective).  The proposed Notice is appropriate

and, accordingly, should be approved.

## V.    The Service Award to Plaintiffs Should Be Approved as Fair and Reasonable.

Plaintiffs' requested service awards are reasonable and should be approved.  "[A]n

incentive award is meant to compensate the named Plaintiff for any personal risk incurred by the

individual or any additional effort expended by the individual for the benefit of the lawsuit."

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005) (quoting *Dornberger v.*

*Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001)).  When evaluating a service award

22

request, courts consider factors such as: "the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in her capacity as a member of the class." *McGee v. Ann's Choice, Inc.*, No. 12 Civ. 2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014); *accord Alvarez v. BI Inc.*, No. 16 Civ. 2705, 2020 WL 1694294, at *6 n.5 (E.D. Pa. Apr. 6, 2020).

Courts in this Circuit commonly approve service awards in the $10,000 to $20,000 range, with some awards as high as $30,000, to recognize plaintiffs' willingness to step forward to represent the interests of fellow workers, risking their reputation in the community and their field, and providing evidence for the case. *See, e.g.*, *Taha v. Bucks Cty.*, No. 12 Civ. 6867, 2020 WL 7024238, at *10 (E.D. Pa. Nov. 30, 2020) (granting $30,000 service award and noting that it is "in line with awards in similar class action litigation"); *Alvarez*, 2020 WL 1694294, at *6-7 & n.6 (approving $15,000 service award to each named plaintiff and collecting cases approving similar awards); *Tavares v. S-L Distrib. Co.*, No. 13 Civ. 1313, 2016 WL 1743268, at *9 (M.D. Pa. May 2, 2016) ($15,000 service award each to both named plaintiffs); *Badia v. HomeDeliveryLink, Inc.*, Nos. 12 Civ. 6920, 12 Civ. 7097, 2015 WL 5666077, at *9 (D.N.J. Sept. 25, 2015) (service awards of $15,000 each to six named plaintiffs); *Creed v. Benco Dental Supply Co.*, No. 12 Civ. 1571, 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) ($15,000 service award to named plaintiff); *Foster v. Kraft Foods Grp. Inc.*, Nos. 09 Civ. 453, 12 Civ. 205, 2013 WL 440992, at *2 (W.D. Pa. Jan. 15, 2013) (approving seven service awards of $15,000 each); *Bredbenner*, 2011 WL 1344745, at *22 ($10,000 service award to each of eight

class representatives); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06 Civ. 3202, 2009 WL 2137224, at *12 (E.D. Pa. July 16, 2009) ($20,000 service award to each of the three named plaintiffs); *Godshall v. Franklin Mint Co.*, No. 01 Civ. 6539, 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1, 2004) ($20,000 incentive award each to two named plaintiffs); *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, *18-19 (E.D. Pa. June 2, 2004) (awarding $25,000 for each of the five class representatives).

Here, the service awards sought are eminently reasonable under the circumstances.  First, Plaintiff Alvarez's requested award of $30,000 is appropriate to recognize her extraordinary commitment to this case and the personal harm she suffered as a result of bringing it.  Plaintiff Alvarez chose to bring this lawsuit to vindicate her rights and the rights of other Chipotle apprentices in New Jersey and to confirm important principles of law that would enhance the protections of other workers.  Alvarez Decl. ¶ 6.  She worked closely with counsel to prepare the Complaint and develop the legal theory of the case.  Swartz Decl. ¶ 62.

When Chipotle moved to hold her in contempt for asserting her rights and the rights of the collective members to be paid the wage rates required by law, she did not hesitate or retreat. *Id.* ¶ 63; Alvarez Decl. ¶ 7.  Instead of dismissing her suit – or even amending the Complaint to exclude the legal theory that Chipotle challenged – she decided to challenge Chipotle's efforts to have her cited for contempt, and even traveled to Texas to appear at the contempt hearing at great personal sacrifice.  Swartz Decl. ¶ 63; Alvarez Decl. ¶ 8.

When the Texas court granted the motion for contempt and directed Ms. Alvarez to withdraw the complaint allegations that relied upon the 2016 Overtime Rule and pay Chipotle's fees and expenses incurred through the contempt proceeding, she stayed the course again,

insisting that the contempt citation should be challenged rather than compromise the claims she brought on behalf of herself and her co-workers.  Swartz Decl. ¶ 64; Alvarez Decl. ¶ 10.

When the Fifth Circuit reversed the contempt citation, she continued prosecuting the litigation in this Court.  Swartz Decl. ¶ 64; Alvarez Decl. ¶ 11.  She caused the case to be expanded to cover thousands more workers by successfully moving to amend the Complaint to include Plaintiff Guni and to expand the scope of the collective to cover apprentices outside of New Jersey.  ECF No. 95.  She also prepared a declaration in support of conditional certification of the New Jersey claims, prepared responses to interrogatories and document requests, and assisted with the resolution of this action.  Alvarez Decl. ¶ 12; Swartz Decl. ¶ 65.  Ms. Alvarez's unwavering assistance in advancing this litigation and informing counsel about the challenged practices, together with her continued resolve and commitment to the steady pursuit of this action when confronted by the citation for civil contempt, reflects invaluable service to the collective deserving of this award.

Plaintiff Guni's requested service award of $10,000 is also well-deserved in light of his contributions to the case.  Plaintiff Guni agreed to join this litigation as a Named Plaintiff in the fall of 2019, after the stay was lifted.  ECF Nos. 66, 95.  Through the information of the challenged practices in the store at which he worked, he provided the foundation for expanding this action to encompass claims nationwide, excluding three states, which added significant value to the lawsuit.  Swartz Decl. ¶ 66; Guni Decl. ¶¶ 6-8.  Plaintiff Guni provided extensive information about the working conditions in stores outside New Jersey and about the practices being challenged, informing the allegations added to the amended nationwide Complaint.  Guni Decl. ¶ 7.  He also executed a declaration in support of Plaintiff's Motion for Court-Authorized

Notice Pursuant to 29 U.S.C. § 216(b) and assisted with the work leading to this settlement. Swartz Decl. ¶ 66.

The award sought for Plaintiff Dickerson in the amount of $2,500 is also commensurate with her contribution to the prosecution of this action. *See Escobar v. Pret a Manger (USA) Ltd.*, No. 17 Civ. 5227, 2019 WL 11272914, at *4 (S.D.N.Y. Feb. 14, 2019) (approving $5,000 service award to declarant). Her declaration in support of Plaintiff's Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) helped demonstrate that other apprentices were similarly situated and, therefore, that issuance of notice was appropriate. ECF No. 58-5. Together, these plaintiffs, each in their own way, made significant contributions to the successful resolution of this action. Swartz Decl. ¶ 67. Accordingly, the service awards should be approved.

## VI.    Plaintiffs' Counsel's Fees and Expenses Are Appropriate and Should Be Approved.

The innovative and high quality work performed by Plaintiffs' Counsel, which exposed them to considerable personal and professional risk, led to a resolution of this action on terms that will provide significant benefits to members of the collective. These efforts, which are described more fully below, fully support the award of attorneys' fees and expenses for which the settlement provides.

### A.    The Percentage-of-the-Fund Method is the Preferred Method for Awarding Attorney's Fees in Common Fund Cases Like This.

Courts in New Jersey and the Third Circuit recognize that, where plaintiff's counsel secures a fund for the benefit of a FLSA collective, counsel are "are entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid wages on behalf of a class under the FLSA." *Brumley*, 2012 WL 1019337, at *9. "[T]he percentage-of-recovery method has been accepted as an established approach to evaluating the award of attorneys' fees

26

in the Third Circuit, and in fact it is 'generally favored in common fund cases because it allows courts to award fees from the fund in the manner that rewards counsel for success and penalizes for failure.'" *Id.* (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005)); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008) ("[A]ttorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." (quoting *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001))).

### B.  The Requested Fee Is Fair and Reasonable.

The settlement provides, and Plaintiffs request, approval of payment of one-third of the $15,000,000 settlement fund as attorneys' fees.  The percentage that Plaintiffs seek is commonly found to be reasonable in FLSA collective action settlements, as well as other class and collective action employment settlements.  *See Cruz*, 2019 WL 4745284, at *9 (approving fees of one-third of the settlement); *Brumley*, 2012 WL 1019337, at *12 (same); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 103 (D.N.J. 2001) (same).

The proposed attorneys' fee is fair and reasonable and readily satisfies the factors identified by the Third Circuit in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).  These factors include: (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the fee requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of non-payment; (6) the amount of time devoted to the case by Plaintiffs' Counsel; and (7) awards in similar cases.  *Id.*  At its discretion, the Court may also conduct a lodestar cross-check to confirm the reasonableness of the requested fee award.  *Id.* at 199.  A lodestar cross-check further supports approval of the requested fee.

### 1.      Size of Fund and Number of Persons Benefitted

The settlement fund of $15,000,000 payable for the benefit of approximately 4,838

apprentices is substantial.  Swartz Decl. ¶ 55; *see also Lenahan v. Sears, Roebuck & Co*, No. 02

Civ. 45, 2006 WL 2085282, at *19 (D.N.J. July 24, 2006) (holding that $15 million FLSA

settlement for 16,000 class members was "significant" and weighed in favor of approving fee

request), *aff'd*, 266 F. App'x 114 (3d Cir. 2008); *see also Bredbenner*, 2011 WL 1344745, at *19

($3 million fund for over 1,000 class members); *In re Janney*, 2009 WL 2137224, at *2-3, *14

($2.9 million for 1,310 class members); *Chemi v. Champion Mortg.*, No. 05 Civ. 1238, 2009 WL

1470429, at *11 (D.N.J. May 26, 2009) ($1.2 million for 917 class members).

### 2.      Objections from the Class

Unlike a Rule 23 class action, no putative Collective Members are bound by the

Settlement until they consent to join this action.  *See supra* Argument, Part II (discussing one-

step FLSA settlement process); *see also Lusardi*, 855 F.2d at 1070 (discussing that under the

FLSA individuals who do not opt-in are not barred from bringing suit at a later date).  As each

prospective collective member will be informed of the settlement terms before electing to join

the action, including the proposed award of attorneys' fees, they may decline to join this action

or pursue their own claims against Chipotle.  *Lusardi*, 855 F.2d at 1070.  The amount of the

attorneys' fees payable in this settlement, moreover, is fully supported by the Named Plaintiffs.

Swartz Decl. ¶ 77; Alvarez Decl. ¶ 13; Guni Decl. ¶ 11.  *See Brumley*, 2012 WL 1019337, at *10

(noting named plaintiffs' reaction to settlement in consideration of this factor).

### 3.      Skill and Efficiency of Plaintiffs' Counsel

The skill and efficiency of plaintiff's counsel is measured by "the quality of the result

achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience

and expertise of the counsel, the skill and professionalism with which counsel prosecuted the

case and the performance and quality of opposing counsel." *Bredbenner*, 2011 WL 1344745, at

\*20 (quoting *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)); *see*

*also Brumley*, 2012 WL 1019337, at \*10.  This settlement, grossing $15 million, representing

more than 70% of the overtime wages that could be recovered after prevailing at trial, reflects an

outstanding result given the risk Plaintiffs faced on numerous issues relating to certification and

liability and their success in enduring and defeating the citation of contempt.  Swartz Decl. ¶ 70.

Plaintiffs' Counsel were able to achieve this result fairly efficiently once the contempt order was

reversed and the stay in this Court lifted in July 2019.  Swartz Decl. ¶ 69.  Following a flurry of

substantive briefing on conditional certification, amendment of the Complaint, judgment on the

pleadings, and the exchange of initial discovery requests, the parties agreed to a mediation which

resulted in this settlement.  Swartz Decl. ¶¶ 35, 72.

Plaintiffs' Counsel are nationally recognized for their experience and expertise in

litigating complex class and collective actions, including wage and hour cases like this one.

Swartz Decl. ¶¶ 8, 12-14; Sellers Decl. ¶¶ 2-4; Savits Decl. ¶¶ 7-8; *see also, e.g.*, *Slaughter v.*

*Sykes Enters., Inc.*, No. 17 Civ. 2038, 2019 WL 529512, at \*7 (D. Colo. Feb. 11, 2019)

(describing Outten & Golden as "sophisticated counsel experienced in wage and hour

employment litigation"); Memo. Opinion and Order, *Reynolds v. Fidelity Invs. Institutional*

*Operations Co.*, No. 18 Civ. 423 (M.D.N.C. Jan. 8, 2020), ECF No. 92 (finding Cohen Milstein

rates "reasonable for their experience, and the one-third share requested is in line with or less

than the customary rates charged in this type of [FLSA overtime] case").

Plaintiffs' Counsel demonstrated their skill and professionalism by successfully

challenging the order holding them and Plaintiff Alvarez in contempt and, once litigation

resumed in this forum, efficiently briefing a number of complex issues—the motion for partial

29

judgment on the pleadings, a motion to amend, motion to send notice pursuant to 29 U.S.C.

§ 216(b), and a motion to stay—within just six weeks.  Swartz Decl. ¶ 72; *see also Brumley*,

2012 WL 1019337, at *10 (citing motion practice as evidence of skill and efficiency factor).

Plaintiffs' counsel advanced a unique and novel legal theory that no one else had

advanced.  *See* Memorandum Opinion & Order at 20, *State of Nevada v. U.S. Dep't of Labor*,

No. 16 Civ. 731 (E.D. Tex. Mar. 19, 2018), ECF No. 129 (noting that Plaintiff's claim was

novel).  Plaintiffs' Counsel thoroughly researched the legal theories and consulted administrative

law experts to develop it.  Plaintiffs' Counsel also analyzed pay and time records used to

compute wage losses that informed the mediation, prepared a comprehensive mediation

statement, and successfully negotiated this outstanding settlement that resulted in a substantial

benefit for members of the Collective.  Swartz Decl. ¶ 74.

Moreover, Plaintiffs' Counsel, like Plaintiff Alvarez, maintained their resolve throughout

this matter by declining to withdraw allegations based on the 2016 Overtime Rule,

notwithstanding the citation of contempt in which the Texas Court directed them to amend the

Complaint to drop their reliance on the 2016 Overtime Rule, which would have disadvantaged

their clients.  Instead of acceding to this directive and denying their clients the benefit of the

2016 Overtime Rule, Plaintiffs' Counsel stood by their legal theory and their commitment to

serve the collective members' interests.  Swartz Decl. ¶ 73.

As a result of the contempt citation, Plaintiffs' Counsel made sacrifices to continue

advancing the legal theory that was a cornerstone of the claims in this action, which ultimately

led to a substantial recovery for more than 4,800 workers.  After the Texas court issued its

contempt citation, Plaintiffs' Counsel had to repeatedly disclose that they had been held in

contempt to state bars, to professional organizations, to courts in *pro hac vice* motions, and in

declarations seeking appointment as Class Counsel in Rule 23 class actions, Swartz Decl. ¶ 75; *id.* Ex. 2; Sellers Decl. ¶ 22; Savits Decl. ¶ 11; and the contempt finding was widely-reported in legal industry publications.[7]  Plaintiffs' Counsel's continued pursuit of the legal theory challenged by Chipotle demonstrates their unwavering commitment to serve the interests of the collective.

After the Fifth Circuit reversed the contempt citation, Plaintiffs' Counsel continued to prosecute the case vigorously, defending the legal foundation of their claim and successfully moving to amend the Complaint and expand the case to seek relief for apprentices nationwide. ECF Nos. 66, 94, 95.

Counsel for Chipotle, similarly, are experienced litigators who vigorously defended this case at every step.  Swartz Decl. ¶¶ 29-36; Sellers Decl. ¶¶ 7-12; *see also Bredbenner*, 2011 WL 1344745, at *20 (noting that "the ability to achieve a favorable result in a case involving such formidable defense counsel is a clear indication of the skill with which class counsel handled these cases").

### 4.      Complexity and Duration of the Litigation

Finally, aside from the factors unique to this case, the more traditional factors also support the award of attorneys' fees requested, including the vigorously contested legal issues, extensive motion practice, and outstanding result Plaintiffs' Counsel obtained on behalf of Plaintiffs and members of the collective.  Swartz Decl. ¶¶ 35, 58, 70, 72.

---

[7]      *See, e.g.*, Daniel Wiessner, *Judge Holds Plaintiff in Chipotle Overtime Case in Contempt*, Reuters (Mar. 19, 2018, 8:50pm), https://www.reuters.com/article/employment-overtime/judge-holds-plaintiff-in-chipotle-overtime-case-in-contempt-idUSL1N1R201K?edition-redirect=in;; Mindy L. Rattan, *Court Grills Attorneys for Suing Chipotle*, BloombergLaw (Mar. 29, 2018, 2:13pm), https://news.bloomberglaw.com/business-and-practice/court-grills-attorneys-for-suing-chipotle-1; Jess Krochtengel, *Chipotle Seeks Contempt Order Over DOL Overtime Rule Suit*, Law360 (Aug. 1, 2017, 5:20pm), https://www.law360.com/articles/950290/chipotle-seeks-contempt-order-over-dol-overtime-rule-suit.

As is evident from the record, this case presented novel and complex legal theories which elicited vigorous defenses. Even more run-of-the-mill "FLSA claims and wage-and-hour law enforcement through litigation [have] been found to be complex by the Supreme Court and lower courts." *Brumley*, 2012 WL 1019337, at *11 (citing *Barrentine*, 450 U.S. at 743; *Lenahan*, 2006 WL 2085282, at *20). But, this case presented several legal issues that are well outside of the routine parameters of FLSA litigation. They include questions of when agency rulemaking becomes effective, the effect of preliminary injunctive relief directed at final agency rules, the availability of private enforcement of the FLSA even after the DOL's capacity to enforce the statute is compromised, the effect of injunctions purporting to be national in scope, and the limitations of parties subject to injunctive relief. Many of these issues were novel or subject to nuanced and unsettled legal authority, requiring extensive research and, in some instances, consultation with experts in administrative law to confirm the legal theory and strategy that underlay the claims advanced in this action. Sellers Decl. ¶¶ 5-6. Significant litigation over complex and sometimes arcane legal issues and extensive factual discovery lay ahead in the event this action proceeded further rather than concluding in a settlement at this juncture. Swartz Decl. ¶ 71. Even after trial or summary judgment, either party might appeal. *Id.* This settlement, in contrast, provides significant relief to members of the collective at this relatively early stage in the litigation. Accordingly, the complexity and potential duration of the litigation further support the requested fee award.

### 5.    Risk of Non-Payment

Plaintiffs' Counsel faced significant risks of nonpayment.  At the outset of the

representation, Plaintiffs' Counsel took "on a significant degree of risk of nonpayment" in

agreeing to represent Plaintiff Alvarez and the FLSA collective.  *See Taubenfeld v. AON Corp.*,

415 F.3d 597, 600 (7th Cir. 2005).  Plaintiffs' Counsel undertook this case advancing novel legal

theories on terms that their compensation was contingent on a successful resolution.  As a result,

there was a significant risk that they would not be paid.  Swartz Decl. ¶ 78; Sellers Decl. ¶ 18;

Savits Decl. ¶ 11; *see also Brumley*, 2012 WL 1019337, at *11.  Should the Court reject this

settlement, the ensuing litigation will require the Plaintiffs to surmount significant legal hurdles

in establishing certification of a nationwide collective and proving liability.  *See supra*

Argument, Part III.C.4; *Bredbenner*, 2011 WL 1344745, at *20; *In re Rite Aid Corp. Sec. Litig.*,

396 F.3d at 304 ("[A] successful outcome can never be regarded as a sure thing." (quoting *In re

Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 608 (E.D. Pa. 2003))).   Plaintiffs' Counsel

"undertook substantial risk that the litigation would yield little or no recovery and leave them

completely uncompensated for their time." *Bredbenner*, 2011 WL 1344745, at *20.

### 6.    Amount of Time Dedicated to the Case by Plaintiffs' Counsel

Plaintiffs' Counsel devoted over 2,382 hours over more than three years litigating this

case, including the satellite litigation associated with the Texas court contempt citation and the

reversal issued by the Fifth Circuit.  Swartz Decl. ¶ 83.  This work included: (a) investigating

Plaintiffs' claims and researching and developing the legal foundation for those claims, (b)

preparing the Complaint, (c) resisting the contempt charges leveled before the Texas Court, (d)

securing the reversal of the contempt citation, (e) extensive motion practice on the legal theories

on which the case is based and the scope of action, (f) the exchange of discovery requests and

preparation of responses, (g) reviewing and analyzing collective-wide pay and time data

produced by Chipotle, and (h) preparation for and participation in two full-day mediation sessions.  *See supra* Factual and Procedural Background, Part II; Swartz Decl. ¶ 84; *Brumley*, 2012 WL 1019337, at *11; *Bredbenner*, 2011 WL 1344745, at *21.  And, the work of Plaintiffs' Counsel has not concluded.  Even if the settlement is approved, Plaintiffs' Counsel's work will continue as they administer the terms of this settlement and respond to inquiries by potential members of the collective.  Swartz Decl. ¶ 90; *Brumley*, 2012 WL 1019337, at *11 (noting that plaintiffs' counsel will continue to incur fees after approval of the settlement).

This factor weighs in favor of approving the fee request.

### 7.    Awards in Similar Cases

The requested fee is also consistent with awards in similar cases.  "To address this factor, the Court should (1) compare the actual award requested to awards in comparable settlements, and (2) ensure that the award is consistent with what an attorney would have likely received if the fee was negotiated on the open market."  *Bredbenner*, 2011 WL 1344745, at *21 (citing *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 604 (D.N.J. 2010), *reversed and remanded on other grounds by Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012)).

With respect to the first factor, the Third Circuit has noted that "fee awards generally range from 19% to 45% of the settlement fund when the percentage-of-recovery method is utilized to assess the reasonableness of requested attorneys' fees."  *Brumley*, 2012 WL 1019337, at *12; *see also Chickie's & Pete's*, 2014 WL 911718, at *4 (same).  As discussed above, attorneys' fee awards amounting to one-third of the settlement fund fall within the range of reasonable allocations in the context of other, similar cases.  *See, e.g.*, *Cruz*, 2019 WL 4745284, at *9 (approving award of attorneys' fees of 33% of settlement fund in FLSA case); *Brumley*, 2012 WL 1019337, at *12 (approving fees of one-third of FLSA settlement and stating that the "request for one-third of the settlement fund falls within the range of reasonable allocations");

*Bredbenner*, 2011 WL 1344745, at *21 (approving an award of 32.6% of the settlement fund); *Adeva v. Intertek USA Inc.*, No. 09 Civ. 1096 (D.N.J. Dec. 22, 2010), ECF No. 228 (approving fee request constituting 34% of $9.9 million settlement fund in FLSA collective action); *Bernhard v. TD Bank, N.A.*, No. 08 Civ. 4392 (D.N.J. Feb. 3, 2010), ECF No. 40 (approving one-third attorneys' fee award in wage and hour class action); *Lenahan*, 2006 WL 2085282, at *19 (approving fee request of 30% of $15 million settlement fund in FLSA class and collective action).

The percentage award in this case is also consistent with prevailing contingent fee rates that would be negotiated on the open market.  *Brumley*, 2012 WL 1019337, at *12; *In re Lucent Techs. Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2006) (observing "the customary contingent fee would likely range between 30% and 40% of the recovery"); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (same); *see also* Savits Decl. ¶ 11 (noting that the standard rate in New Jersey for non-personal injury contingency matters is between 30% and 40%).  When Plaintiffs' Counsel represent clients on a contingency basis, that arrangement typically permits counsel to request payment of one-third of the recovery as attorneys' fees. Swartz Decl. ¶ 76; Sellers Decl. ¶ 18; Savits Decl. ¶ 11.  Indeed, Plaintiffs' Counsel's retainers with Plaintiffs Alvarez and Guni provide that Plaintiffs' Counsel may request one-third of any (at that time uncertain) future recovery, plus expenses.  Swartz Decl. ¶ 76.  For these reasons, awards in similar cases favor approving the requested fee award.

### 8.   The Lodestar Cross-Check Confirms the Reasonableness of the Fee Request.

A lodestar cross-check further supports the reasonableness of Plaintiffs' Counsel's requested fee award.  "In determining the lodestar for cross-check purposes, the Court need not engage in a 'full-blown lodestar inquiry,' or 'mathematical precision.'"  *Bredbenner*, 2011 WL

35

1344745, at *22 (first quoting *In re AT&T Corp.*, 455 F.3d 160, 169 n.6 (3d Cir. 2006)); and then

quoting *In re Rite Aid Corp.*, 396 F.3d at 306-07).  "The district courts may rely on summaries

submitted by the attorneys and need not review actual billing records . . . . [T]he resulting

multiplier need not fall within any pre-defined range, provided that the District Court's analysis

justifies the award."  *Meijer, Inc. v. 3M*, No. 04 Civ. 5871, 2006 WL 2382718, at *23 (E.D. Pa.

Aug. 4, 2006) (alterations in original) (quoting *In re Rite Aid Corp.*, 396 F.3d at 306-07); *accord*

*Stevens v. SEI Investments Co.*, No. 18 Civ. 4205, 2020 WL 996418, at *12 (E.D. Pa. Feb. 28,

2020).  In any event, the cross-check "while useful, should not displace a district court's primary

reliance on the percentage-of-recovery method."  *In re AT&T Corp.*, 455 F.3d at 164.

"Lodestar multiples of less than four (4) are well within the range awarded by district

courts in the Third Circuit."  *Martin v. Foster Wheeler Energy Corp.*, No. 06 Civ. 878, 2008 WL

906472, at *8 (M.D. Pa. Mar. 31, 2008) (citing *In re Prudential Ins. Co. Am. Sales Practice*

*Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)).[8]  In fact, multipliers of up to 8 are often

approved in common fund cases.  *See In re Rite Aid*, 362 F. Supp. 2d at 589-90 (approving a 6.96

multiplier).[9]

---

[8]      In *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001), the Third Circuit
"strongly suggest[ed]" that a cap of 3 times the lodestar multiplier was appropriate in a
"relatively simple" case with "no risks pertaining to liability or collection."  *Id.* at 735-36, 742-
43; *see also In re Diet Drugs*, 582 F.3d 524, 545 n.42 (3d Cir. 2009); *Bredbenner*, 2011 WL
1344745, at *22.  However, this figure "is not a ceiling on multipliers," especially where cases
are not straightforward or settled quickly.  *Sullivan v. DB Investments, Inc.*, No. 04 Civ. 2819,
2008 WL 8747721, at *36 (D.N.J. May 22, 2008).  This case was not "relatively simple" and had
significant risks "risks pertaining to liability."  *See supra* Part VI.B.4.
[9]      In a few cases in this Circuit, courts have cut counsel's fee requests in circumstances not
applicable here.  *See, e.g.*, *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503,
524 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d
Cir. 2005) (9.68 multiplier reduced to 3.5 in $3 billion antitrust settlement); *Stop & Shop*
*Supermarket Co. v. SmithKline Beecham Corp.*, No. 03 Civ. 4578, 2005 WL 1213926, at *1,
*16-18 (E.D. Pa. May 19, 2005) (23.59 multiplier reduced to 15.6 in $100m antitrust settlement);
*In re Cendant Corp*, 243 F.3d at 725 (in $340m securities fraud settlement, vacating award of

Here, Plaintiffs' Counsel's combined lodestar is approximately $1,417,562.50, Swartz

Decl. ¶ 88; Sellers Decl. ¶ 16; Savits ¶ 9, which results in a multiplier of 3.5.  This is within the

range of multipliers commonly approved by courts in this Circuit.  *See, e.g.*, *In re Diet Drugs*,

582 F.3d at 545 n.42 (affirming multiplier of approximately 3.4); *Arrington v. Optimum*

*Healthcare IT, LLC*, No. 17 Civ. 3950, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018)

(approving multiplier of 5.3 in FLSA case); *Harshbarger v. Penn Mut. Life Ins. Co.*, No. 12 Civ.

6172, 2017 WL 6525783, at *6 (E.D. Pa. Dec. 20, 2017) (approving multiplier of 3.67); *Brown*

*v. Progressions Behavioral Health Servs., Inc.*, No. 16 Civ. 6054, 2017 WL 2986300, at *7 (E.D.

Pa. July 13, 2017) (approving multiplier of 3.1); *Keller v. TD Bank, N.A.*, No. 12 Civ. 5054, 2014

WL 5591033, at *16 (E.D. Pa. Nov. 4, 2014) (approving multiplier of "slightly above 3" in

FLSA case); *Sullivan*, 2008 WL 8747721, at *36 (approving multiplier of approximately 3.3); *In*

*re Rite Aid*, 362 F. Supp. 2d at 589-90 (approving a 6.96 multiplier); *Nichols v. SmithKline*

*Beecham Corp.*, No. 00 Civ. 6222, 2005 WL 950616, at *24 (E.D. Pa. Apr. 22, 2005) (approving

multiplier of 3.15); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002)

(approving multiplier of 4.3 in part because counsel took the case on a contingency basis and

obtained an "excellent result").

Moreover, Plaintiffs' Counsel will be required to perform additional work in connection

with this case following this Court's approval, such as responding to inquiries from Collective

Members about the Settlement and supervising the Settlement Administrator.  Swartz Decl.

¶ 90.  As such, the multiplier will be even lower by the time the matter is closed and Plaintiffs'

Counsel's work is complete.  *See Stevens*, 2020 WL 996418, at *13 (noting that additional work

---

fees with a multiplier of 7 and "strongly suggest[ing]" that the district court award lodestar
multiplier of 3).

will be performed after approval and "the multiplier will likely be lower by the time the matter is closed and Class Counsel's work is complete"); *Sullivan*, 2008 WL 8747721, at *36 (providing that the multiplier "does not include the additional work that will be needed to fully implement the settlement and bring the case to closure, and it is unquestioned that additional work will be required").

A lodestar multiplier is allowed because of "the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *Sullivan*, 2008 WL 8747721, at *35 (quoting *In re Rite Aid*, 396 F.3d at 306). The multiplier "may reflect the risks of nonrecovery facing counsel, may serve as an incentive for counsel to undertake socially beneficial litigation, or may reward counsel for an extraordinary result." *In re Prudential Ins. Co.*, 148 F.3d at 341. Plaintiffs' Counsel litigated this case entirely on a contingency basis and faced significant risk of non-payment, which further supports the reasonableness of the requested multiplier. *Keller*, 2014 WL 5591033, at *15.

Here, a multiplier is particularly appropriate given complexity and novelty of the legal issues and the unique obstacles Plaintiffs' Counsel faced in this case.

### C.   Plaintiffs' Counsel Are Entitled to Reimbursement of Expenses Under the Settlement.

Plaintiffs' Counsel also seek reimbursement for expenses and costs in the aggregate amount of $327,481.48. "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components*, 166 F. Supp. 2d at 108; *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 125 (D.N.J. 2012) (same). These expenses and costs incurred by Plaintiffs' Counsel were necessary for the prosecution and resolution of this case, and include outside counsel expenses, Plaintiffs' share of mediation fees, the cost of settlement

administration, research, travel, and costs associated with the contempt proceeding.  *See* Swartz Decl. ¶¶ 91-93; Sellers Decl. ¶ 23; Savits Decl. ¶ 9.  Accordingly, Plaintiffs' Counsel's request for reimbursement of costs should be granted.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully requests that the Court issue an order substantially in the form of Plaintiffs' Proposed Order.

Dated:  February 26, 2021                  Respectfully submitted,

/s/ *Glen D. Savits*

Glen D. Savits
GREEN SAVITS LLC
25B Vreeland Road, Suite 207
Florham Park, NJ 07932
Telephone: (973) 695-7777
gsavits@greensavits.com

Justin M. Swartz*
Melissa Lardo Stewart*
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
jms@outtengolden.com
mstewart@outtengolden.com

Joseph M. Sellers*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
jsellers@cohenmilstein.com

*Attorneys for Plaintiffs and the Putative Collective*

*admitted *pro hac vice*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on February 26, 2021, the above document was filed electronically

and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent

by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone

unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may

access this filing through the Court's CM/ECF System.


 /s/ Glen D. Savits
Glen D. Savits